657 F.Supp. 1273 (1987)
Warren GARRETT, Plaintiff,
v.
GENERAL MOTORS CORPORATION, Defendant.
No. 85-2219C(6).
United States District Court, E.D. Missouri.
April 24, 1987.
Louis Gilden, Norah F. Ryan, St. Louis, Mo., for plaintiff.
James E. McDaniel, Lashly, Baer & Hamel, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
GUNN, District Judge.
Plaintiff Warren Garrett brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., alleging that General Motors Corp. discriminated against him on the basis of race: (1) in the terms and conditions of employment, and (2), in discharging him on March 29, 1971.
The case was tried to the Court. After consideration of the record, the parties' joint stipulation of facts, evidence and exhibits presented at trial, and the applicable law, the Court enters the following findings of fact and conclusions of law in accordance with Rule 52, Fed.R.Civ.P. Judgment is in favor of defendant.

FINDINGS OF FACT
Defendant General Motors Corp. (GMC) is a Delaware corporation doing business in the State of Missouri and is an "employer" within the meaning of Title VII.
Plaintiff, a black male, was employed by GMC on May 18, 1967. In September 1970 plaintiff filed a grievance with his union about racially discriminatory conditions at work, and on December 22, 1970[1] and March 18, 1971 he filed discrimination charges against GMC with the Equal Employment Opportunity Commission (EEOC).
*1274 On March 29, 1971 plaintiff was discharged for participating in a wildcat strike in protest of defendant's alleged racially discriminatory practices. A total of 125 black employees were disciplined as a result of the strike. Twenty-six of these employees were initially discharged; after settlement of grievances, six of those discharged, including plaintiff, remained discharged. Within several days plaintiff notified the EEOC in St. Louis of his discharge, and the discharge was made part of his pending charge.
Unable to find work in early 1972 plaintiff left St. Louis and moved to Decatur, Illinois where he has since held several jobs and now resides.
On May 25, 1972 the St. Louis district office of the EEOC reached a "reasonable cause" decision with respect to plaintiff's charge, and on August 10, 1972, conciliation efforts with GMC failed.
On February 2, 1973 plaintiff's file was forwarded to the EEOC's Regional Litigation Center in Chicago, Illinois to be considered for litigation by the EEOC. Sometime prior to November 1974 the file was transferred to the National Programs Division of the EEOC, for the probable purpose of determining if it was suitable for inclusion in a nationwide claim the EEOC was bringing against GMC. The file was designated as "Unsuitable" by the National Programs Division and in November 1974 was sent from the National Programs Division to the St. Louis District Office. In March 1976 the file was sent from the St. Louis office to the Federal Record Center in Washington, D.C. where it was destroyed in accordance with EEOC procedures. It is unclear when the file was destroyed. There was evidence that it was destroyed in October 1976. Yet, other evidence indicated that it was destroyed in 1979.
On September 30, 1980 the U.S. District Court for the Eastern District of Missouri held in Mosley v. General Motors Corp., 497 F.Supp. 583 (E.D.Mo.1980), aff'd, 691 F.2d 504 (8th Cir.1982), that the discipline imposed by GMC following the March 1971 wildcat strike violated Title VII. The three plaintiffs in that suit were awarded back pay due to the discipline, plus costs and attorneys' fees.
Sometime in late. 1980 plaintiff's stepfather sent plaintiff a newspaper article on the Mosley case. After receiving the article, plaintiff contacted the EEOC and was told that his file had been destroyed.
Plaintiff testified that between 1972 when he left St. Louis and 1980 when he received the newspaper article, he had made personal visits to the EEOC in St. Louis on at least a yearly basis to inquire about his case and that each time the EEOC representative with whom he spoke told him that his case was still pending. The Court disbelieves this testimony. The testimony is undermined by the undisputed fact that plaintiff's EEOC file was closed in March 1976 and sent to the Federal Record Center. The Court does not give credence to plaintiff's allegation that each time he contacted the EEOC thereafter  at least 10 times according to his count  he would have been given incorrect information.
In late 1983 plaintiff's aunt sent him a newspaper article dated October 19, 1983 which reported that GMC and the EEOC had reached a National Settlement Agreement on a case stemming from discrimination charges brought against GMC in 1973 by the EEOC. After receiving the article plaintiff again contacted the EEOC and asked if he was covered by the Settlement Agreement. Plaintiff testified that one EEOC representative told him that plaintiff's records had been destroyed and that he did not know anything about his case. However, another EEOC representative allegedly told him that his claim was still active.
In January 1984 plaintiff wrote a letter to his U.S. Congressman requesting information regarding the status of his claim against GMC and asking when he might expect to receive his share of the settlement. In response to inquiries, the Congressman received a letter from GMC and a letter from the EEOC, both of which were forwarded to plaintiff. The letter from the EEOC stated that plaintiff had been sent a right-to-sue letter in August 1972 when conciliation efforts failed. The *1275 letter from GMC stated that the EEOC closed plaintiff's case in December 1974 and destroyed his file in 1980, and that plaintiff did not have a pending claim.
Upon receipt of these letters plaintiff wrote to the Chairman of the EEOC in May 1984 stating that he had never received a right-to-sue letter. In June 1984 plaintiff received two letters in response. The first was from the EEOC's Washington, D.C. office stating that because the EEOC had no records indicating that plaintiff had previously been issued a right-to-sue letter, the Washington office had directed the St. Louis office to issue plaintiff a right-to-sue letter. The second letter was from the Acting District Director in St. Louis and stated that plaintiff may not have been issued a right-to-sue letter but that such a letter would not now be issued until it was determined whether plaintiff was covered by the National Settlement Agreement.
On July 22, 1985 plaintiff was issued a right-to-sue letter. This suit was filed on September 11, 1985, approximately 15 years after the filing of plaintiff's original EEOC charge and 14½ years after plaintiff's discharge from GMC.
The question of whether an earlier right-to-sue letter was received by plaintiff was a key factual dispute at trial. Clearly under EEOC procedures, as established by the evidence, plaintiff should have received a notice years earlier. Plaintiff tried to establish, based upon a reconstruction of what may have happened, that plaintiff's file was sidetracked from the normal EEOC process and that as a result a right-to-sue letter was never issued (i.e., until 1985). No explanation was offered as to why plaintiff would not have received a timely right-to-sue letter when the three Mosley plaintiffs did. Because all of plaintiff's EEOC records, except for the skeletal Case Control Ledger, have been destroyed, it is impossible to know what actually happened. Based upon the evidence this Court cannot find that it is more likely than not that the July 1985 right-to-sue letter was the first and only received by plaintiff.

CONCLUSIONS OF LAW
The equitable doctrine of laches is applicable to Title VII actions brought by private plaintiffs. Boone v. Mechanical Specialties Co., 609 F.2d 956, 959 (9th Cir. 1979).
To establish an affirmative defense of laches the defendant has the burden of proof to show: (1) an unexcusable and unreasonable delay by the plaintiff, and (2) prejudice to the defendant. Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir.1979); Cleveland Newspaper Guild v. The Plain Dealer Publishing Co., 813 F.2d 101, 103 (6th Cir.1987) (private plaintiff Title VII case). In considering whether to apply laches to defeat a suit the district court must look to the "peculiar equitable circumstances of that case" and "focus upon the length of the delay, the reasons therefore, how the delay affected the defendant, and the overall fairness of permitting the assertion of the claim." Goodman v. McDonnell Douglas Corp., 606 F.2d at 806.

Delay
There is some disagreement among the circuits as to whether EEOC delays in processing a claim should be attributable to a plaintiff in considering whether plaintiff's delay in bringing a Title VII suit is excusable. The Seventh Circuit has held that a "plaintiff does not have an absolute right to await termination of EEOC proceedings." Jeffries v. Chicago Transit Authority, 770 F.2d 676 (7th Cir.1985) (relying on administrative process cannot excuse 10 year delay between bringing charge and filing suit where plaintiff did nothing to prod agency or to seek a right-to-sue letter), cert. denied, 469 U.S. 925, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). The D.C. Circuit and the Ninth Circuit have taken a similar position. Rozen v. District of Columbia, 702 F.2d 1202, 1204 (D.C.Cir.1983) holds that plaintiff's failure to secure a right-to-sue letter for four years does not constitute unexcusable delay where plaintiff did not sleep on his rights. The holding in Gifford v. Atchison, Topeka & Santa Fe Ry., 685 F.2d 1149, 1152 (9th Cir. *1276 1982) is that the EEOC delay of five years in issuing right-to-sue letter is not attributable to plaintiff because she repeatedly appealed to the EEOC for action and was assured by the agency that suit would be filed on her behalf.
The Eleventh Circuit, on the other hand, has held that the plaintiff's "failure to file his Title VII until completion of the EEOC process was not inexcusable delay and cannot support the application of laches." No mention is made of any action on the part of plaintiff during the five year delay in that case, or of any obligation upon the plaintiff to take any action. Howard v. Roadway Express, Inc., 726 F.2d 1529, 1533 (11th Cir.1984). The Sixth Circuit follows this approach in Cleveland Newspaper Guild v. The Plain Dealer Publishing Co., 813 F.2d 101, which involves a ten year EEOC process before a right-to-sue letter was finally issued. In that case, however, the plaintiff was affirmatively told by letter from the EEOC two years after the charge was filed that the EEOC was uncertain when it could begin to process the charge and that plaintiff could choose to keep the charge open until the EEOC could attend to it rather than bring suit in court at that time.
Under the finding of facts in this case, the Court concludes that the passage of 15 years from the filing of plaintiff's terms-and-conditions EEOC charge, and of 14½ years from the amendment of his charge to include his discharge constitute inexcusable and unreasonable delay. As stated, plaintiff's contact with the EEOC was minimal until 1980 when he learned of the successful litigation by other disciplined employees. Even then he did not actively pursue his rights until the beginning of 1984 when he learned of the National Settlement Agreement.

Prejudice
The issue of whether a defendant suffered prejudice from a delay is intertwined with the determination of whether a delay is unreasonable. "If only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." Goodman v. McDonnell Douglas Corp., 606 F.2d at 800. EEOC v. Westinghouse Electric Corp., 592 F.2d 484, 486 (8th Cir. 1979) and EEOC v. Liberty Loan Corp., 584 F.2d 853, 857 (8th Cir.1978) enunciate a stricter standard for finding prejudicial effect when the EEOC itself delays in bringing a Title VII suit. In such a situation, a defendant must establish "with such clarity as to leave no room for controversy" that it has been substantially and unduly prejudiced because of the EEOC's delay.
Applying this stricter standard of prejudice to this private plaintiff case, the Court concludes that plaintiff's delay has caused GMC substantial and undue difficulties in defending the law suit. The prejudice to defendant as to plaintiff's claim of discriminatory terms and conditions of employment prior to his termination is clear. Records have been destroyed, supervisory personal responsible for the alleged acts have died, memories have faded. It is precisely these types of problems which the doctrine of laches addresses.
The prejudice to defendant as to plaintiff's claim of discriminatory termination is slightly different. The Court concludes that the Mosley case establishes as a matter of law that defendant's discharge of plaintiff on March 29, 1971 was in violation of Title VII. Thus, the current unavailability of evidence on the circumstances surrounding the termination is not really relevant.
Defendant, however, has been seriously prejudiced by the 14½ year delay in another way. If the EEOC had issued a right-to-sue letter prior to that issued on July 22, 1985, as defendant tried to establish, this suit would be barred by the jurisdictional requirement that a Title VII suit be filed within 90 days of receipt of a right-to-sue letter. See 42 U.S.C. § 2000e-5(f). As the above findings of fact set forth, because plaintiff's EEOC records were destroyed, at the latest in 1979, it is impossible to determine whether a timely right-to-sue letter *1277 was received. Thus, the delay involved in the case precluded defendant from establishing a statute of limitations defense. The Court concludes that these circumstances support the application of laches in this case.
Another purpose underlying the doctrine of laches, other than the impairment of a defendant's ability to defend, is repose  the concept that at some point a party is entitled to assume that it is no longer subject to liability for a certain past event. Laches shares this purpose with statutes of limitations. In the present case the injury-causing event occurred 14½ years before suit was initiated. This is not a case in which plaintiff first became aware of his injury some time after the event. Every case wherein laches is to be applied involves a "delicate balance of equities." Goodman v. McDonnell Douglas Corp., 606 F.2d at 809. For the reasons set forth, the Court concludes that the circumstances of this case warrant barring plaintiff's suit on the basis of laches.
Judgment is accordingly entered in favor of defendant General Motors Corporation.
NOTES
[1] This charge was received in the EEOC Kansas City District Office on October 8, 1970. After deferment to the state agency it was considered filed with the EEOC on December 22, 1970.