**Warren GARRETT, Appellant,**

v.

**GENERAL MOTORS CORPORATION, Appellee,**

**Warren GARRETT, Appellee,**

v.

**GENERAL MOTORS CORPORATION, Appellant.**

Nos. 87–1626, 87–1671.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1988.

Decided April 14, 1988.

Rehearing and Rehearing En Banc Denied May 20, 1988.

Norah J. Ryan, St. Louis, Mo., for appellant.

James E. McDaniel, St. Louis, Mo., for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and BEAM, Circuit Judge.

ROSS, Senior Circuit Judge.

Warren Garrett appeals from a final judgment of the district court[1] entered in favor of General Motors Corporation (GMC). In 1985, Garrett brought this action against GMC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging race discrimination in the terms and conditions of his employment and in his termination from the St. Louis GMC plant in 1971. The district court entered judgment in favor of GMC, holding that the equitable doctrine of laches barred Garrett's Title VII claims. We affirm.

Garrett, a black man, was employed by GMC from May 18, 1967, until his termination on March 29, 1971. While he was employed, Garrett twice filed discrimination charges against GMC with the Equal Employment Opportunity Commission (EEOC) with respect to the terms and conditions of his employment. Later, in March of 1971, Garrett was terminated, along with twenty-six other black employees, for participating in a wildcat strike held in protest of GMC's alleged discriminatory practices. Within several days after his discharge, Garrett filed an additional charge of discriminatory termination with the EEOC. He subsequently moved to Decatur, Illinois, where he awaited processing of his EEOC claims.

Garrett testified that between 1972 and 1980 he made numerous visits and phone calls to the EEOC office in St. Louis to inquire about the status of his case, and that on each occasion he was told his case was still pending. In 1980, Garrett again contacted the EEOC office after learning that three GMC employees, who were also terminated as a result of the 1971 wildcat strike, had been awarded back pay in their Title VII suit against GMC. See *Mosley v. General Motors Corp.*, 497 F.Supp. 583 (E.D.Mo.1980), *aff'd*, 691 F.2d 504 (8th Cir. 1982). In late 1983, Garrett again called the EEOC, this time to inquire whether his case would be covered by a national conciliation agreement reached between the

EEOC and GMC in settlement of a nation-wide discrimination suit filed in 1973. At that time he was informed by the EEOC that his file had been destroyed. He was advised, however, that he should wait to see if his case would be covered by the national agreement since the EEOC had reviewed his file for possible inclusion. Garrett later learned that his case would not be covered by the national agreement. Eventually, on July 22, 1985, the EEOC issued Garrett a right-to-sue letter, and this suit was filed in district court on September 11, 1985.

At trial, a considerable amount of evidence was offered to attempt to reconstruct the EEOC's processing of Garrett's claims. However, because all of Garrett's EEOC records, except for the skeletal case control ledger, had been destroyed in either 1976 or 1979, the district court concluded that it was very difficult to determine how the case was actually processed. Nonetheless, the district court expressed its doubt that the July 1985 right-to-sue letter was the first and only letter received by Garrett.

In considering Garrett's testimony, the district court discredited the frequency with which Garrett claimed to have contacted the EEOC office in pursuing his claim. Specifically, the district court found that "[Garrett's] contact with the EEOC was minimal until 1980 when he learned of the successful litigation by other disciplined employees. Even then he did not actively pursue his rights until the beginning of 1984 when he learned of the National [Conciliation] Agreement." *Garrett v. General Motors Corp.*, 657 F.Supp. 1273, 1276 (E.D. Mo.1987).

Based on its findings of fact, the district court held as a matter of law that Garrett's action was barred by the doctrine of laches. The district court concluded that the fourteen and one-half year delay in filing this suit was unreasonable and unexcused and that GMC's defense had been prejudiced as a result. The district court also held that, absent the application of laches, GMC was collaterally estopped on the issue of liability by the decision in *Mosley v. General Motors Corp.*, *supra*, 497 F.Supp. at 590. The district court specifically stated, "the *Mosley* case establishes as a matter of law that defendant's discharge of plaintiff on March 29, 1971, was in violation of Title VII." *Garrett, supra*, at 1276.

Garrett now appeals the district court's application of laches in barring his suit, and GMC cross appeals the district court's finding of collateral estoppel with respect to the issue of liability.

Garrett argues that the application of laches by the district court was an abuse of discretion and based upon clearly erroneous findings of fact. Stressing that the "[p]rimary responsibility for enforcing Title VII has been entrusted to the EEOC," *EEOC v. Shell Oil Co.*, 466 U.S. 54, 61–62, 104 S.Ct. 1621, 1627, 80 L.Ed.2d 41 (1984), and that the legislature intended the individual suit option to be the exception and not the rule, *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 366, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977), Garrett argues that a plaintiff's failure to file a Title VII claim until completion of the EEOC process is not inexcusable delay and cannot support the application of laches. He contends that so long as the plaintiff has (1) made reasonable, periodic inquiry into the status of his claim, and (2) done nothing to affirmatively cause the delay, he has a right to indefinitely await completion of the EEOC's process before filing suit.

██ We disagree. This circuit has previously recognized that the doctrine of laches is a proper defense in a Title VII action, and may be used to bar a lawsuit where the plaintiff is guilty of (1) unreasonable and unexcused delay, (2) resulting in prejudice to the defendant. *Whitfield v. Anheuser–Busch, Inc.*, 820 F.2d 243, 244 (8th Cir.1987). *See Cleveland Newspaper Guild v. Plain Dealer Publishing Co.*, No. 86–3140, (6th Cir. Feb. 11, 1988) (en banc) (WESTLAW, 1988 WL 8795) (to be reported at 839 .F.2d 1147); *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986); *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958–59 (9th Cir.1979). We have also recog-

nized that "laches may apply either when the delay in bringing suit was caused by a private plaintiff or when the delay is the fault of an administrative agency." *Whitfield, supra,* 820 F.2d at 244–45 (footnote omitted). We agree with the Sixth Circuit that:

> [W]hether another party contributes to the delay is only one factor in assessing the reasonableness of a plaintiff's actions. The question is not purely one of assigning fault. As stated in Pomeroy's treatise: "A court of equity * * * has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. * * *" J. Pomeroy, 11 Equity Jurisprudence, § 419 at 171 (S. Symons 5th ed. 1941). Thus, even though another party may have contributed to the delay, the court still must determine whether plaintiff's own delay or inaction inexcusably caused prejudice to the defendant.

*Cleveland Newspaper Guild, supra,* (WESTLAW, 1988 WL 8795 at 15 (to be reported at 839 F.2d at 1153–54). Whether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court. *Whitfield, supra,* 820 F.2d at 245.

It is undisputed that Garrett's file was improperly processed by the EEOC and that Garrett was misinformed, at least on one occasion, about the status of his case. The court must also consider, however, whether the plaintiff's own delay or inaction caused prejudice to the defendant. In this instance, the district court determined that Garrett's contact with the EEOC was minimal between 1972 and 1980, and that he did not actively pursue his claim until 1984. We conclude that the district court's findings of fact in this regard are not clearly erroneous. Based on these findings, it was within the district court's discretion to find that Garrett had made insufficient inquiry between 1972 and 1984 and that GMC had been prejudiced as a result of the twelve year delay. We find no abuse of discretion in the district court's application of laches under these circumstances.

We have also carefully considered each of the appellant's remaining arguments and find them to be without merit. Furthermore, because we affirm the district court's application of laches in barring Garrett's Title VII claims, we decline to reach the issues raised in GMC's cross appeal.

Affirmed.