48 F.3d 1051
 67 Fair Empl.Prac.Cas. (BNA) 208,
67 Fair Empl.Prac.Cas. (BNA) 992
Barbara H. ASHLEY, Plaintiff-Appellant,
v.
BOYLE'S FAMOUS CORNED BEEF COMPANY, a Missouri Corporation,
Defendant-Appellee,
Robert Boyle; David Nelson, Defendants.
 No. 94-2174.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1994.
Decided Feb. 27, 1995.
Order Granting Rehearing En Banc
April 18, 1995.
 
 Arthur A. Benson, II, Kansas City, MO (Dianne E. Moritz, on the brief), for appellant.
 Brian J. Finucane, Kansas City, MO (Stephany J. Newport, on the brief), for appellee.
 Before BOWMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.
 BOGUE, Senior District Judge.
 Barbara Ashley appeals the district court's[1] order granting summary judgment in favor of Boyle's Famous Corned Beef Co. (hereinafter Boyle's) on Ashley's claims of employment discrimination. For the reasons stated below, we affirm.
 Ashley began working at Boyle's as a laborer in June, 1985 and became a full-time employee in May 1986. Boyle's is a meat processing plant employing between 25 to 30 individuals. The plant is divided into a "lower level" where most of the corned beef processing takes place, and a "second floor" which is the site of various other meat processing activities. Ashley alleged that she and all other female employees worked on the second floor. It was generally believed that the contract between Boyle's and the Independent Meat Cutters Union # 1 (Union) did not encompass second floor employees.[2] Under the union contract, members enjoyed the benefits of specified wage rates, raises based upon length of service, and recognition of seniority with respect to layoffs and recall.
 Male employees were assigned exclusively to the lower level, and prior to 1992 all union positions were held by male employees. Prior to April of 1994, no female employee was ever assigned to the lower level, and no woman had ever been a member of the union. Ashley further alleged that there was no discernable difference between duties performed by second floor and lower level employees, and frequently male union employees would be assigned to the second floor for various lengths of time.
 Ashley's present claims against Boyle's are inexorably tied to the company's original classification of her position as non-union and the company's alleged resistance to allow female employees to become union members. Ashley and other female employees had long recognized a wage disparity between males and females employed by Boyle's. Said disparity also represented a distinction between union and non-union employees. Ashley alleges that, beginning in 1986, she and other female employees repeatedly asked company officials as to when their wages would be brought into line with their male counterparts or when they would be permitted to join the union.[3] Ashley alleges that she and other female employees received repeated assurances that women would eventually be permitted to join the union, or, alternatively, that their complaints regarding wage disparity would be remedied without the women having to join the union.
 Ashley filed a charge with the Equal Employment Opportunity Commission (EEOC) on November 2, 1992. She was granted the right to sue and filed the current sexual discrimination action on March 31, 1993, alleging violations of Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and the Missouri Human Rights Act.[4] The day before the suit was filed, Ashley was offered a union position with a seniority date of April 1993, which she accepted. The defendants moved for summary judgment as to all claims based on the doctrine of laches, the applicable statute of limitations, and the merits. The district court ruled that Boyle's was entitled to summary judgment based on both the doctrine of laches and the statute of limitations. Ashley appealed the district court's order granting Boyle's motion for summary judgment.DISCUSSION
 Before the merits of the laches issue can be addressed, there is a question as to whether the laches doctrine may be applied at all under the present facts. Ashley claims the district court erred in entering judgment for Boyle's based upon the doctrine of laches because, as a matter of law, laches has no application during the period before a plaintiff files an administrative charge of discrimination. It is her position that, in Title VII actions, laches is only applicable for delays during the period following the EEOC charge and prior to filing the lawsuit. She contends that the timeliness of her lawsuit should be governed exclusively by the statutes of limitations established by Congress and the Missouri legislature.[5] We review this issue of law de novo.
 There is little doubt that equitable principles, including the doctrine of laches, have influenced courts in the context of Title VII. This Circuit has held broadly that "laches is a proper defense in a Title VII action and a court may use laches to reach 'a just result.' " Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 244 (8th Cir.1987), citing EEOC v. Liberty Loan Corp., 584 F.2d 853, 856 (8th Cir.1978). Further, laches may apply either when the delay in bringing suit was caused by a private plaintiff or when the delay is the fault of an administrative agency. Whitfield, 820 F.2d at 244-45.
 It is true that all cases from this Circuit affirming a dismissal of a Title VII claim on the basis of laches, have occurred where a timely administrative charge was filed, but there was a delay in filing a subsequent lawsuit. See, e.g., Whitfield, 820 F.2d 243 (ten year delay filing suit after timely EEOC charge); Liberty Loan, 584 F.2d 853 (four year and four month delay in suit brought by EEOC following claimant's administrative charge); Garrett v. General Motors Corp., 844 F.2d 559 (8th Cir.1988) (fourteen and one-half year delay bringing suit after timely EEOC charge).[6]
 Despite this, the same rationale supporting the laches defense for delays following administrative filing, applies equally as strong to delays prior to the administrative filing. The same potential prejudice to the defendant, e.g., loss of witnesses or evidence in support of a position, failing witness memory, etc., can occur regardless of whether the delay is before or after an administrative charge is made. In fact, we are inclined to agree with Boyle's that application of the laches doctrine may make more sense in pre-charge delay because once a charge has been filed with the EEOC, the company is at least put on notice that it is facing a claim. Without an administrative charge being filed, the defendant is wholly lacking in notice. We reject Ashley's contention in this regard and proceed to the merits of laches defense.
 The doctrine of laches may be used to bar a lawsuit where the plaintiff is guilty of (1) unreasonable and unexcused delay, (2) resulting in prejudice to the defendant. Garrett, 844 F.2d at 561, citing Whitfield, supra, 820 F.2d 243, 244. As an affirmative defense, the burden of persuasion generally rests with the defendant. Whitfield, 820 F.2d at 244. Whether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court. Garrett, 844 F.2d at 562.
 In examining the "unreasonable and unexcused delay" prong of the laches standard, we consider both the length of the delay and the plaintiff's reasons for the delay. Whitfield, 820 F.2d at 244. Here, we are satisfied that Ashley's current complaints all relate to her denial of union status in 1986 when she became a full-time Boyle's employee. There is substantial evidence in her deposition that membership in the union (with attending benefits) was her ultimate purpose. The harm that occurred in the succeeding years, if any, can be traced back to 1986 when Ashley's position was classified non-union. As such, her filing a charge with the EEOC in November 1992, amounts to a six year delay. Each case is viewed in light of the particular facts and no amount of time is per se unreasonable, Whitfield, 820 F.2d at 245, citing Liberty Loan, 584 F.2d at 857. We find that the district court did not abuse its discretion in finding the length of the present delay unreasonable.
 Despite the length of the delay, Ashley argues that her delay should be excused. She cites a fear of reprisal by the company against her and/or her son (also a Boyle's employee) if action was taken. The district court viewed Ashley's concerns in this regard as "vague and unsubstantiated" in that she was unable to cite any other employee so disciplined following filing a claim, and could not specifically articulate the source of her concern. The district court's rejection of these contentions and finding the delay unexcused was not an abuse of discretion.
 Ashley also claims that action was not taken earlier because company officials made assurances during her tenure that equal pay and equal treatment would be forthcoming, with or without the benefit of Union membership. While the subject of the current lawsuit centers around equal pay and treatment, it is clear that Ashley's primary concern during the time period in issue was Union membership. The district court did not address this excuse; but even if something amounting to an assurance was made by company officials, the last such assurance, by Ashley's testimony, occurred in 1988. This is still four years prior to the time Ashley's charge was filed with the EEOC. Under the circumstances we find this argument to be without merit and hold that Ashley's delay was both unreasonable and unexcused.
 The second prong of the laches standard requires Boyle's to show that it was prejudiced by the delay. The district court cited, inter alia, the deaths of two key witnesses as evidence of prejudice to Boyle's. Robert Boyle, company president and named defendant in Ashley's original suit, died the day before the suit was served. Steve Eiserman, Ashley's foreman for seven years and Union president at the time she was hired and became a full-time employee, died in May 1992. The loss of evidence in support of the defendant's position or the unavailability of witnesses are among the types of prejudice that will support a defense of laches. Whitfield, supra, 820 F.2d at 245, citing Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir.1979). Testimony of these witnesses would have been critical in Boyle's attempts to defend itself. A finding of prejudice was not an abuse of discretion.
 CONCLUSION
 The conclusions we have reached concerning the laches issue discussed above make it unnecessary for us to address the other issues raised, specifically--whether Ashley's claims would be similarly barred by the applicable statutes of limitations. For the reasons stated, we affirm the decision of the district court.
 LOKEN, Circuit Judge, dissenting.
 I respectfully dissent. As Justice Cardozo succinctly stated the historic principle at issue on this appeal, "Laches within the term of the statute of limitations is no defense at law." United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 818, 79 L.Ed. 1559 (1935). With the merger of law and equity under modern rules of civil procedure, this bright-line rule has lost much of its clarity. But I have found no case that applied laches to bar a federal cause of action that was timely filed under a federal statute of limitations, particularly one prescribing a relatively short limitations period. See Miller v. Maxwell's Internat'l, Inc., 991 F.2d 583, 586 (9th Cir.1993) (ADEA); Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 214 (9th Cir.1962) (securities laws). See generally Cornetta v. United States, 851 F.2d 1372 (Fed.Cir.1988) (en banc).
 Barbara Ashley was laid off by Boyle's Famous Corned Beef Company on June 12, 1992. On November 2, 1992, she filed a Title VII charge with the Missouri Human Rights Commission, alleging that this lay-off resulted from application of a sexually discriminatory seniority system. Title VII requires that such a charge "shall be filed ... within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. Sec. 2000e-5(e)(1). On March 31, 1993, she filed her complaint in this action making the same allegation. This claim is not time barred. Ms. Ashley also seeks relief for alleged violations dating back to 1986, and many of those claims may be time-barred or precluded by equitable remedial principles. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 423-25, 95 S.Ct. 2362, 2374-75, 45 L.Ed.2d 280 (1975). But I conclude that the district court erred in granting summary judgment dismissing all of Ms. Ashley's claims. Accordingly, I would reverse and remand for further proceedings.
 ORDER
 April 18, 1995
 Appellant's petition for rehearing with suggestion for rehearing en banc is granted. This Court's opinion and judgment filed February 27, 1995, are vacated.
 
 
 1
 The case is set for oral argument on Tuesday, May 23, 1995, in St. Louis, Missouri.
 
 
 
 *
 The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the Western Division of the District of South Dakota, sitting by designation
 
 
 [1]
 Honorable Dean Whipple, United States District Court Judge for the Western District of Missouri, Western Division
 
 
 [2]
 Despite the terms of the union contract which purports to cover all employees "working in the employer's corned beef plant," both the union and Boyle's had interpreted the contract to cover only lower level employees
 
 
 [3]
 Apparently, Boyle's officials were reluctant to extend union membership to female employees. In mid-1988, members of the union voted to permit women to join their organization. Despite the vote, Boyle's late president, Robert Boyle, refused to extend union membership to Ashley and the other female employees. A similar vote was taken and passed in the early 1990s
 
 
 [4]
 The named defendants included Boyle's Famous Corned Beef, David Nelson, company secretary and executive vice president, and the now-deceased company president, Robert Boyle, Sr
 
 
 [5]
 Under Title VII, a Missouri claimant must generally file a claim with the EEOC within 300 days after the allegedly discriminatory act, 42 U.S.C. Sec. 2000e-5(e)(1), and within 180 days under the Missouri Human Rights Act, R.S.Mo. Sec. 213.075.1. At oral argument the discussion centered primarily on whether laches could "trump" the statute of limitations imposed in a federal cause of action
 
 
 [6]
 It is not surprising there is a lack of case law addressing this issue, as it would only arise in a situation (claimed here by Ashley) where a plaintiff's suit was not barred by the statute of limitations (presumably via an assertion of "continuing violation" equitably tolling the limitations period) and yet the plaintiff was so dilatory with the administrative filing that the issue of laches arose