**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1869-23

LAURA DILAURA,[1]

    Plaintiff-Appellant,

v.

EDWARD DILAURA, SR.,

    Defendant-Respondent.

_____

> Argued March 11, 2025 – Decided March 31, 2025
>
> Before Judges Gilson, Firko, and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-1348-97.
>
> Eric J. Warner (Eric J. Warner, LLC) argued the cause for appellant.
>
> Damiano M. Fracasso argued the cause for respondent.

PER CURIAM

---

[1] Plaintiff is now known as Laura Ober.

In this post-judgment dissolution matter, plaintiff Laura Ober appeals from the Family Part's January 23, 2024 order that denied her request for reimbursement of the parties' two children's college expenses, awarded her $186.70 for unreimbursed medical expenses, and awarded defendant Edward DiLaura, Sr. $2,372.50 in counsel fees. We affirm the judge's order denying plaintiff's request for reimbursement of the college expenses and the $186.70 amount for unreimbursed medical expenses. However, we reverse and remand the award of counsel fees because the judge did not analyze the required Rule 5:3-5(c) factors.

I.

This matter comes before us for a second time. The chronology is set forth in this court's unpublished opinion entered on April 23, 2020, in which we remanded and directed the judge to conduct further proceedings to address the issues raised on appeal anew and to make the required Rule 1:7-4 findings. See DiLaura v. DiLaura, Sr., No. A-3656-18 (App. Div. Apr. 23, 2020) (slip op. at 11-13). We incorporate, by reference, the facts stated in our prior opinion to the extent they are consistent with those developed on remand.

When the parties divorced in 1998, their final judgment of divorce (FJOD), paragraph twenty-five, included provisions regarding medical expenses and college costs for the children as follows:

> [p]laintiff and defendant shall pay for one-half of the cost of the unreimbursed medical/dental/eye expenses of the children.
>
> . . . .
>
> [p]laintiff and defendant shall consult with each other in regards to the high school and college education of their children at the time of their anticipated enrollment. Said discussions shall include where the children will go to school, the cost of the same[,] and whether or not the parties can afford such education. In the event the parties agree to a specific school for high school and/or college for the [children][,] it is agreed that the parties shall pay for the same based upon their respective incomes at the time of enrollment.

The FJOD ordered defendant to pay $180 per week for child support for both children.

In May 2014, the parties' son graduated from Seton Hall University. In May 2016, the parties' daughter graduated from Hofstra University. Both children were twenty-two years old when they graduated from college.

In March 2017, nineteen years after the FJOD, plaintiff filed her first post-judgment motion to compel defendant to pay his "fair share" of medical expenses, college costs, and other relief not challenged on appeal. Defendant

3

filed a cross-motion to emancipate the children retroactive to the dates of their college graduations, terminate his child support obligation, and for counsel fees. With the exception of the enforcement of child support arrears, the motions were denied without prejudice, and the parties were referred to mediation to address the issues raised in the motions. Mediation was unsuccessful.

In May 2018, plaintiff filed a second post-judgment motion seeking essentially the same relief. Defendant filed a cross-motion to retroactively emancipate the children on the dates of their respective college graduations. On March 14, 2019, the judge ruled on the parties' motions and entered an order unaccompanied by a written or oral decision and only stating conclusory findings. After plaintiff appealed the order, we remanded for further proceedings.

On remand, the judge conducted a two-day plenary hearing, heard testimony from the parties, and considered evidence consisting of loan documents, medical bills, receipts, letters between the parties, plaintiff's case information statements (CIS) filed in 1998 and 2017, and a deed pertaining to Bloomingdale property that was deeded to defendant on February 13, 2017, two months prior to execution of his CIS, which are not contained in the appendix.

Defendant and his sister became constructive trustees of their father's home where the father lived until his death.

Plaintiff testified that defendant failed to meet his financial obligations or have "meaningful relationships" with his children after he remarried. Plaintiff claimed that defendant's new wife did not want him at plaintiff's home, and eventually, defendant stopped seeing the children. According to plaintiff, the parties had a discussion "as a family [a] long, long time ago" that the college costs, consisting of four years of college and two years of graduate school, would be debt financed and split three ways between the parties and the child. Plaintiff testified this agreement was made when the parties were "married" around "1990" but acknowledged it was not reduced to a writing.

Plaintiff claimed that defendant and the older child toured colleges together, and defendant "agreed" the older child would attend Seton Hall. Plaintiff testified that defendant did not accompany the younger child during any college tours. Plaintiff also claimed that defendant "hid assets," including his interest in his father's Bloomingdale home, which was not disclosed on his CIS.

Plaintiff testified that she had to liquidate assets, such as stocks and retirement plan accounts, to provide for the children's financial support.

Plaintiff stated that the paternal grandfather, now deceased, co-signed two loans for the older child, and the maternal grandfather co-signed two loans for the younger child. Plaintiff testified that she could not afford a $5,000 retainer to retain an attorney to file a motion to seek contribution from defendant and chose not to proceed as a self-represented litigant. In 2016, plaintiff claimed she was able to retain counsel at "a reduced rate." Plaintiff is employed by Verizon and earns $160,000 per year.

Defendant testified he was never meaningfully involved in or apprised of the children's college selections. Defendant stated he never co-signed any college-related loans for the children. Defendant also testified that he was "not going to be in any position to help financially because [he was] losing [his] house . . . getting divorced again, [and was] basically broke." Defendant explained that he requested a 1098 tax form from plaintiff for the younger child because he claimed her as a dependent every year on his income tax returns. Defendant stated the parties spoke about the children attending college but never reached an agreement regarding payment for such education. He claimed his annual income as a machinist is approximately $60,000.

The judge issued a twenty-page written opinion setting forth her findings of fact and conclusions of law. The judge found the parties were "equally

6

credible." Regarding medical expenses, the judge determined that plaintiff was barred by the doctrine of laches from seeking reimbursement prior to 2014 and denied plaintiff's request for reimbursement dating back to 2001. The judge found plaintiff's delay was "unacceptable and unreasonable." The judge awarded plaintiff $186.70 for medical expenses from 2014 until the children were emancipated on July 14, 2017.

Regarding college costs, the judge analyzed the parties' testimony, the evidence, and the twelve Newburgh[2] factors. The judge concluded that defendant was not responsible for the college costs of either child. Citing to paragraph twenty-five of the FJOD, the judge highlighted that the parties were required to consult and discuss the children's college selection, costs, and affordability. Defendant was awarded $2,372.50 for his counsel fees incurred in opposing plaintiff's motion.

On appeal, plaintiff reiterates her arguments, contending the judge abused her discretion by finding defendant is not responsible for any of the children's college education costs and misapplying the Newburgh factors. Plaintiff argues the judge abused her discretion by applying the doctrine of laches to the

---

[2] Newburgh v. Arrigo, 88 N.J. 529 (1982).

A-1869-23

unreimbursed medical expenses. Plaintiff also contests the award of counsel fees.

II.

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). This court may "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (citation omitted).

A Family Part judge exercises "substantial discretion" in determining parents' contribution to college expenses. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (quoting Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008)). However, we owe no deference to a decision that is "manifestly unreasonable, [or] arbitrary . . . " J.B. v. W.B., 215 N.J. 305, 326 (2013) (citation omitted), or that "ignores applicable standards," Gotlib, 399 N.J. Super. at 309.

8

Where there is "sufficient credible evidence present in the record . . . [we] should not disturb the result . . . ." Beck v. Beck, 86 N.J. 480, 496 (1981) (citation omitted). Deference is especially appropriate in bench trials "when the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (citation omitted). "We ordinarily defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand . . . ." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).

Therefore, we will "not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Rova Farms, 65 N.J. at 484 (citation omitted).

New Jersey's legislature and courts "have long recognized a child's need for higher education . . . ." Gac v. Gac, 186 N.J. 535, 542 (2005). As such, courts should consider the non-exhaustive list of twelve factors delineated in Newburgh when evaluating a claim for contribution towards the cost of a child's higher education. Gac, 186 N.J. at 543. Under Newburgh, our Supreme Court

set forth the twelve factors in considering what portion of college expenses a child may reasonably demand of a non-custodial parent:

(1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[88 N.J. at 545.]

In <u>Gac</u>, our Supreme Court noted that "[o]bviously, the factors set forth in <u>Newburgh</u> . . . contemplate that a parent or child seeking contribution towards the expenses of higher education will make the request before the educational expenses are incurred." 186 N.J. at 546. As such, "[t]he failure to do so will weigh heavily against the grant of a future application." <u>Id.</u> at 547. In <u>Gac</u>, the

10

father paid child support while the child was in college, and the mother did not request college expense contribution until after graduation.  Id. at 539.

Our Supreme Court concluded that "those facts are significant and tip the scale in favor of denial of plaintiff's request for contribution."  Id. at 547. Subsequently, in Gotlib, we applied the Gac holding and concluded that, when the motion is brought after the expenses are incurred, thereby excluding the parent from the decision-making process, splitting college expenses in half between the parties without addressing the Newburgh factors was "not sustainable."  399 N.J. Super. at 310.

Absent an enforceable agreement apportioning child support and college costs, "a trial court should balance the statutory criteria of N.J.S.A. 2A:34-23(a)[3] and the Newburgh factors, as well as any other relevant circumstances,

---

3  N.J.S.A. 2A:34-23 provides:

> a.  [i]n determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:
> (1)    Needs of the child;
> (2)    Standard of living and economic circumstances of each parent;
> (3)    All sources of income and assets of each parent;

A-1869-23

to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Gac, 186 N.J. at 543.

Plaintiff contends the judge erred in finding defendant is not responsible for any part of the children's college costs. According to plaintiff, the judge abused her discretion by determining defendant was credible "at his word" because he "commit[ed] perjury" on his CIS by omitting his one-half interest in his father's Bloomingdale home that was deeded to defendant two months prior, and the judge misapplied the Newburgh factors in making her determination. Plaintiff claims the judge did not consider defendant's request for 1098 tax forms reporting the younger child's tuition so he could get a "tax credit."

---

(4)     Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5)     Need and capacity of the child for education, including higher education;
(6)     Age and health of the child and each parent;
(7)     Income, assets and earning ability of the child;
(8)     Responsibility of the parents for the court-ordered support of others;
(9)     Reasonable debts and liabilities of each child and parent; and
(10)   Any other factors the court may deem relevant.

Plaintiff asserts she submitted an exhibit at the hearing explaining how she calculated the $470,561.82 sum that she claimed defendant owed her. According to plaintiff, the parties agreed early in their marriage to assist the children in paying for their higher education and split the student loan repayments three ways, with each party paying one-third, and the child paying one-third. Plaintiff contends the judge abused her discretion by not finding defendant's "assent" to this purported agreement, as "evidenced" by defendant's father co-signing loans. The record and the judge's findings do not support plaintiff's arguments.

The judge acknowledged plaintiff is a college graduate, and defendant is a high school graduate. Thus, the parties "anticipated that the children would attend college" as contemplated in paragraph twenty-five of the FJOD. The judge noted that plaintiff sought $470,561.82 from defendant for unpaid education and medical bills. In her opinion, the judge stated the amount plaintiff was seeking toward the children's college tuition was "unclear," but was approximately one-third of the total educational costs.

On the issue of affordability, the judge credited defendant's testimony that he "couldn't afford it," and found his "jointly earned income of $96,000" at the

time of the older child's enrollment and one year prior to the younger child's enrollment was "not substantive enough for college contribution."

In the present case, the judge provided a detailed analysis of each of the Newburgh factors. The judge's decision comported with paragraph twenty-five of the FJOD. Moreover, the record shows that plaintiff did not file a motion with the court before the college expenses were incurred in contravention of Gac, 186 N.J. at 546-47. Therefore, we are satisfied the judge did not abuse her discretion.

III.

Plaintiff next asserts the judge abused her discretion by applying the doctrine of laches to the unreimbursed medical expenses claim prior to 2014. Plaintiff argues the judge failed to explain why she "arbitrarily picked 2014 as the cut off" and only gave weight to defendant's testimony that he was unable to pay the children's uncovered medical expenses due to his financial circumstances without considering plaintiff's testimony that her resultant financial hardship from defendant's failures prevented her from hiring an attorney to enforce her rights.

Defendant counters that plaintiff has never challenged paragraph twenty-five of the FJOD and "sat on her rights." Defendant contends there was never

14

any meaningful "conversation" between the parties "before or after college enrollment," and neither party could afford to debt finance private universities.

"Laches is an equitable doctrine which penalizes knowing inaction by a party with a legal right from enforcing that right after passage of such a period of time that prejudice has resulted to the other parent[] so that it would be inequitable to enforce the right." L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002). "The key ingredients" to the applicability of laches "are knowledge and delay by one party[,]" coupled with a detrimental "change of position by the other [party]." Ibid.

Thus, factors considered in determining whether to apply laches include "[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay." Ibid. (quoting Lavin v. Bd. of Educ. of City of Hackensack, 90 N.J. 145, 152 (1982)) (internal quotation marks omitted). "While laches does not arise from delay alone," inequity "more often than not, will turn on whether a party has been misled to his harm by the delay." Ibid. (quoting Lavin, 90 N.J. at 153).

However, "unlike the periods prescribed by the statute of limitations," the constraints of laches "are not fixed" but are flexible enough to accomplish mutual fairness and equity in a given case. Lavin, 90 N.J. at 151. "[W]hether

laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2012) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

Here, the judge did not misapply her discretion on laches. Plaintiff waited an excessive amount of time to file a motion to compel defendant to reimburse her for medical expenses. Plaintiff's claims on this issue date back to May 2001, while the most recent proof of medical expenses she submitted is dated January 2018. Plaintiff's argument is that her delay in filing a motion was due to a lack of finances to retain counsel. Her argument is unavailing. Plaintiff was aware she could return to court as evidenced by the terms of the FJOD. As noted by the judge, plaintiff, who is college educated, could have filed a motion as a self-represented litigant.

The judge found plaintiff's delay in filing for relief was "extraordinary" and that she "had plenty [of] opportunity to file a pro se application" prior to the 2016 filing. And, the judge noted that plaintiff's contention that she was unable to afford counsel for fifteen years is "an incredible claim." Moreover, plaintiff waited until the children completed their college educations before filing her

16

first motion, which the judge determined "is an unreasonable explanation for the delay in filing for medical expenses."

The judge however found defendant should be responsible to pay medical and health-related expenses from the beginning of 2014, two years prior to the filing of the first motion in 2016, until the emancipation of both children in July of 2017. The record supports that determination. We therefore conclude the judge did not abuse her discretion, and we affirm the decision concerning medical expenses.

IV.

Finally, plaintiff asserts that the judge abused her discretion in awarding defendant counsel fees. "An award of counsel fees is only disturbed upon a clear abuse of discretion." City of Englewood v. Exxon Mobile Corp., 406 N.J. Super. 110, 123 (App. Div. 2009) (citing Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). We "will disturb a trial court's determination on counsel fees only on the 'rarest occasions, and then only because of a clear abuse of discretion.'" J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

A judge in a family action may award attorney's fees pursuant to Rule 5:3-5(c). "Fees in family actions are normally awarded to permit parties with

A-1869-23

unequal financial positions to litigate (in good faith) on an equal footing." J.E.V., 426 N.J. Super. at 493 (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)). "[T]he party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." Ibid. (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). Rule 5:3-5(c) lists nine factors that the court shall consider in determining an award of counsel fees:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Here, the judge merely stated she was granting defendant's application for counsel fees, and the Rule 5:3-5(c) factors she found "relevant" were factors one, three, and seven. The judge's decision lacks sufficient findings to evaluate the specific award determination. See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 387 (2009). Absent an oral or written statement of reasons for the

18                                                                    A-1869-23

award and analysis of the <u>Rule</u> 5:3-5(c) factors, we lack the ability to substantively consider the propriety of the award and "are left to conjecture as to what the judge may have had in mind." <u>Salch v. Salch</u>, 240 N.J. Super. 441, 443 (App. Div. 1990). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." <u>Ibid.</u> Thus, we vacate the fee award and remand to the judge for an analysis of the <u>Rule</u> 5:3-5(c) factors.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division