262 N.J. Super. 303 (1992)
620 A.2d 1088
BARBARA KELLY, PLAINTIFF,
v.
JOHN C. KELLY, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Atlantic County.
June 18, 1992.
*304 Nancy R. Mazin, Esquire, for plaintiff.
John C. Kelly, pro se, defendant.
SELTZER, P.J.F.P.
Plaintiff's application for counsel fees requires a determination of the propriety of an award of fees against a party who has taken a clearly mistaken  even frivolous  position but who is not motivated by malice. The result is dictated by an analysis of the statutory language permitting an award of fees after consideration of "the financial circumstances of the parties *305 and the good or bad faith of either party". N.J.S.A. 2A:34-23.
In the present case, Defendant, against whom a default was ultimately entered, rejected a recommendation of the Matrimonial Early Settlement Panel that was close to the advice of his then attorney. Defendant continued to refuse to accept his attorney's recommendations to the point that I determined the attorney-client relationship had so deteriorated that counsel should be relieved. Thereafter, the court entered default against Defendant and a Notice of Equitable Distribution was filed. Defendant appeared on the date set for the hearing and was permitted to participate fully. A decision was rendered on the economic issues that closely approximated the recommendations of both the Matrimonial Early Settlement Panel and Defendant's former attorney.
After the decision was rendered, Plaintiff sought fees, in part based upon her belief "that a substantial portion of the fees involved were as the direct result of Defendant's actions in rejecting the Matrimonial Early Settlement Panel's recommendation...". Plaintiff also complains that during the course of this litigation, Defendant behaved in such a way that she was required to obtain restraining orders. Finally, Plaintiff asserts that Defendant failed to appear for one scheduled court appearance although this matter had been adjourned on various other occasions.
Because I am satisfied that Plaintiff is not economically disadvantaged and because I do not believe Defendant acted in bad faith, I deny the application. That denial is grounded in a historical analysis of the statute governing fees.
Prior to the 1988 amendment of the statute, counsel fees were awarded in accordance with the criteria expounded by the Supreme Court in Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971). Those criteria related to the applicant's needs, the parties' relative financial ability to bear the costs of litigation *306 and the applicant's good faith in instituting or defending the action.
In 1988, the Appellate Division ruled that fees may not be awarded because a party has acted in bad faith. Darmanin v. Darmanin, 224 N.J. Super. 427, 540 A.2d 913 (App.Div. 1988). Thereafter, in a move widely regarded as a legislative reversal of Darmanin, the legislature, as part of the comprehensive revisions incorporated in Chapter 153 of the Laws of 1988, specifically provided that bad faith was an element to be considered when awarding fees. N.J.S.A. 2A:34-23. That statute provides in pertinent part that when considering a fee application, the court "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." The court rule to which reference is made is R. 4:42-9. All of the conditions of that rule are satisfied here and accordingly, I turn to the statutory criteria.
Initially, I note that any statute which attempts to impose sanctions in the form of fees is subject to attack on the grounds that it impermissibly intrudes upon the Supreme Court's constitutional right to regulate the practice of law in violation of the principles set out in Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950). See Somerset Trust Co. v. Sternberg, 238 N.J. Super. 279, 285, 569 A.2d 849 (Ch.Div. 1989); Evans v. Prudential Property, 233 N.J. Super. 652, 658, 559 A.2d 888 (Law Div. 1989); Haines, Court v. Legislature: Who Will Adjudge Frivolity, 130 N.J.L.J. 997 (March 23, 1992). I am nevertheless satisfied that the fee provisions of N.J.S.A. 2A:34-23 are constitutionally permissible for two reasons. The only challenge to a similar statute has been rejected persuasively. Fagas v. Scott, 251 N.J. Super. 169, 597 A.2d 571 (Law Div. 1991). Moreover, the Supreme Court permits fees to be awarded when authorized by law. R. 4:42-9(a)(8). The Courts announced and consistent policy of according respect and comity to co-equal branches, See e.g. Passaic County Probation *307 Officers Ass'n v. County of Passaic, 73 N.J. 247, 374 A.2d 449 (1977), coupled with a failure to amend the rules since 1988 all suggest that the fee provisions of N.J.S.A. 2A:34-23 are constitutional. Accordingly, I turn to the considerations of financial condition and motivation.
Fees in family actions are normally awarded to permit parties with unequal financial positions to litigate (in good faith) on an equal footing. Anzalone v. Anzalone Bros. Inc. and Anzalone, 185 N.J. Super. 481, 486-7, 449 A.2d 1310 (App.Div. 1982). With the addition of bad faith as a consideration, it is also apparent that fees may be used to prevent a maliciously motivated party from inflicting economic damage on an opposing party by forcing expenditures for counsel fees. This purpose has a dual character since it sanctions a maliciously motivated position and indemnifies the "innocent" party from economic harm. Fagas v. Scott, supra, 251 N.J. Super. at 194, 197-200, 597 A.2d 571.
In the first instance, if both parties litigate in good faith, fees would not be awarded unless the parties economic positions were disparate. Clearly, the parties must provide the court with financial information in such a case. However, the second instance, where one party acts in bad faith, the relative economic position of the parties has little relevance. The purpose of the award is to protect the "innocent" party from unnecessary costs and to punish the "guilty" party. The court should afford protection and impose punishment regardless of the assets available to the innocent party. Accordingly, the need to produce economic information lessens as the "bad faith" of the party against whom fees are sought increases; conversely the court may not award fees in the absence of disclosure demonstrating economic disparity unless the moving party shows "bad faith".
In this case, there is no economic disparity. Although the Defendant's gross weekly income is approximately three times that of Plaintiff ($631 v. $245), after adjustment for allowable *308 tax and union dues expenses the disparity is considerably less ($433 v. $200). When child support and alimony payments are considered the parties are in essentially identical economic positions ($218 v. $205). Moreover, the equitable distribution ultimately ordered divided the parties' assets equally. Thus, absent a showing of bad faith, a fee award is inappropriate.
The term "bad faith" is not easily defined. The revised Fourth Edition of Black's Law Dictionary defines bad faith as
"the opposite of `good faith', generally implying or involving actual or constructive fraud or a design to mislead or deceive another or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."
This definition requires that the action of the party against whom fees are sought must be such as to suggest an improper motive. It implies something more than a showing of a mistaken, unreasonable or frivolous position (although the degree of unreasonableness may be such as to permit an inference as to motive). It requires a party to have malicious motives, to be unfair, to desire to destroy the opposing party, to use the court system improperly to force a concession not otherwise available.
We can conclude with some certainty that bad faith and frivolity are not synonymous. In 1988, the legislature adopted N.J.S.A. 2A:15-59.1 permitting the recovery of counsel fees if the pleading of a non-prevailing was "frivolous".[1] That term is statutorily defined as either (1) "in bad faith solely for the *309 purpose of harassment delay or malicious injury" or (2) "without any reasonable basis in law or equity".
Since the legislature, by using the term "bad faith" in amending N.J.S.A. 2A:34-23 is presumed to know that five months earlier it used a more expansive term in adopting N.J.S.A. 2A:15-59.1, Wilson v. Robert A. Stretch, Inc., 44 N.J. Super. 52, 58, 129 A.2d 599 (Ch.Div. 1957), we may presume that the distinction is purposeful. Smith v. Hazlet Tp., 63 N.J. 523, 309 A.2d 210 (1973).
Thus, under N.J.S.A. 2A:15-59.1 the court may award fees for "bad faith" positions or "unreasonable" positions while under N.J.S.A. 2A:34-23 only "bad faith" positions (in the absence of financial inequality) support an award of fees.
Several other considerations support the conclusion that a mistaken or frivolous position  as opposed to a maliciously motivated position  cannot support an award of fees in a dissolution context. First, of course, is the general philosophy that, absent specific authorization to the contrary, the court should allocate fees to the litigant incurring them. Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 225 A.2d 328 (1966). Although this may impose a financial burden upon a prevailing litigant, it insures that meritorious defenses are not discouraged for fear of an adverse decision and consequent award of fees. After balancing the "unfair" burden of imposing the cost of his victory on a successful litigant against the danger of deterring the presentation of meritorious positions, the Supreme Court clearly favors free access. See Pressler, Current N.J. Court Rules, Comment 1 on R. 4:42-9 (1992) at 997-8.
Moreover, although Part IV of the Rules provides a mechanism for obtaining fees, Part V does not. In the Family Part, there are no mandatory arbitrations similar to those governed by R. 4:21A-1 with its attendant award of fees if an arbitration decision is rejected improperly. R. 4:21A-6. Similarly, the provisions of R. 4:58, which provide for the award of fees if an offer of settlement is rejected when the subsequent trial results *310 in a similar judgment, is specifically made inapplicable to "matrimonial actions". If the Supreme Court intended to award fees to litigants in the dissolution context when the adversary refused an offer which was ultimately incorporated in an order following trial, the result was easily obtainable. They did not do so and I conclude that "bad faith" is required.
For this reason, Defendant's failure to accept the recommendations of his attorney and the Matrimonial Early Settlement Panel, although very close to the ultimate determination made after trial, does not invoke the award of fees. The Defendant is under no obligation to accept such recommendations or advice. Indeed, a party is not obligated to negotiate. So long as the position assumed is not motivated by an attempt to "torture" the other party, bad faith cannot be found. Plaintiff may not like the position taken by Defendant, but he is entitled to take that position.
I had the opportunity to observe Defendant during the Equitable Distribution hearing. I am completely satisfied that his position was motivated by a good faith belief that the law could not (or should not) require the child support payments, alimony payments and contributions to college expenses that the court ultimately awarded. Those payments do constitute, in fact, a substantial portion of Defendant's income. That the result after trial approximates the result predicted by both Defendant's counsel and the Panel does not detract from Defendant's right to have a judge listen to him and make a decision.
Although Plaintiff asserts that she was required to obtain restraining orders as a result of Defendant's behavior, she is not entitled to fees on that account. Defendant's acts related to issues of custody and visitation and were not unusual in a dissolution context. They are explained by a good faith concern for the welfare of his children. Unless Defendant's actions appear clearly motivated by bad faith, considerations of judicial economy prohibit further inquiry. Any other rule *311 would require a hearing on motivation any time fees were sought when the parties are in economic parity.
Defendant's failure to appear for one scheduled court appearance, does not invoke a fee award. There is no suggestion that Defendant continuously violated court orders for discovery or otherwise (Cf. DiGiacomo v. DiGiacomo, 256 N.J. Super. 404, 410-411, 607 A.2d 186, 189-190 (App.Div. 1992), and fees should not be attributable to that one failure to appear in this context.
In sum, Defendant's pendente lite behavior does not clearly suggest malice and his failure to accept the recommendation of either his lawyer or the MESP is not legally sufficient to justify the award of fees. While this result imposes a substantial burden on Plaintiff, it is, in light of her economic parity, required by the judicial philosophy of imposing fees upon the party incurring them. While the wisdom of a policy encouraging settlements by threatening to award fees if an "unreasonable" position prevents a settlement may be fairly debatable, the adoption of such a philosophy (which constitutes a reversal of the status quo) must first occur. Such directions must come from an Appellate Court and under existing law I am compelled to deny the application.
NOTES
[1] On reflection it is apparent that this act does not apply to actions cognizable in the Family Part. By its terms it applies to "civil actions" whereas actions in the Family Part (although Civil in nature as opposed to Criminal) are designated "family" actions. R. 4:42-9(a)(1). Presumably, the use of the word "civil actions" in that statute was meant to include the "civil actions governed by Part IV of the rules (R. 4:1) and exclude the "family actions" governed by Part V (R.5:1-1). Moreover, if N.J.S.A. 2A:15-59.1 applied to the family part, there would have been no need to adopt the amendment to N.J.S.A. 2A:34-23 to provide for fees since some five months earlier the same legislature adopted the frivolous law suit act.