**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1808-16T4

JANICE S. MARANO,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

MATTHEW MARANO,

      Defendant-Respondent/
      Cross-Appellant.

_____

Argued May 1, 2019 - Decided June 7, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0460-08.

Bonnie C. Frost argued the cause for appellant/cross-respondent (Einhorn Harris Ascher Barbarito & Frost PC, attorneys; Bonnie C. Frost, of counsel and on the briefs; Matheu D. Nunn, on the brief).

Bruce H. Nagel argued the cause for respondent/cross-appellant (Nagel Rice LLP, attorneys; Bruce H. Nagel, of counsel and on the brief).

PER CURIAM

Plaintiff Janice Marano appeals and defendant Matthew Marano[1] cross-appeals from the October 14, 2016 order confirming the arbitration award in the parties' contentious divorce proceedings. In November 2016, after nine years of litigation, the divorce was finalized. Janice does not wish to vacate the entire award, and Matthew does not wish to vacate the award at all. Both parties, however, take issue with various portions of it. After reviewing the record in light of the contentions advanced on appeal, we affirm.

I. Factual and Procedural Background.

The parties were married in 1980 and have one child who is emancipated. They agree they lived "a very high lifestyle." Matthew worked as an ophthalmic and retinal surgeon, while Janice gave up her nursing career in 1985 and competed in horse shows throughout the marriage. Matthew earned approximately $1.5 million annually at the time of the divorce litigation. The parties usually owned seven vehicles between them. They were members of Trump National Golf Club (Trump National), Essex Country Club, Telluride Ski & Golf Club in Colorado, and the Essex Hunt Club.

---

[1] We will refer to the parties by their first names for clarity, intending no disrespect.

A-1808-16T4

Janice filed a complaint for divorce in October 2007. After numerous applications of various sorts, in November 2008 the court ordered Matthew to pay $7200 per month in unallocated support plus $5000 per month towards Janice's rent, $800 per month for Janice's car lease, and $7500 per month for equestrian expenses. In addition, Matthew was ordered to maintain the Trump National membership, which consisted of $20,000 annual dues plus a fee for monthly dining privileges.

Several marital properties were sold during the pendency of the litigation, resulting in over $1 million of proceeds for each party. In June 2011, the parties agreed to arbitrate the divorce issues, initially with a former Superior Court Judge. After this arbitrator made many pendente lite decisions and heard significant testimony, Janice moved for his recusal, and ultimately the parties consented to his removal.

A retired Justice became the second arbitrator in April of 2013. After further testimony and decisions, she recused herself after our decision in Minkowitz v. Israeli, 433 N.J. Super. 111 (App. Div. 2013).

A retired Superior Court Judge became the third arbitrator in 2014. After eighteen further days of hearings, on December 17, 2014, he issued a sixty-two page initial decision (2014 Decision). Both parties then filed before him for reconsideration of the 2014 Decision.

On May 17, 2016, he issued a modified fifty-six page arbitration opinion (2016 Decision). He ordered that: 1) Matthew pay Janice annual alimony of $427,885 in monthly installments, tax deductible to Matthew and taxable to Janice; 2) Matthew maintain a $2.5 million life insurance policy with Janice as the named beneficiary; 3) Janice pay Matthew $443,773; 4) Matthew pay $272,888 towards Janice's counsel fees; and 5) the parties pay $156,598 to the third arbitrator and $11,000 to the second arbitrator.

Matthew moved in the Somerset County Superior Court to confirm the arbitration award and to add an equal division of the retirement accounts to the judgment. Janice filed opposition to defendant's motion to confirm the arbitration award based on purported errors committed by the arbitrator. The court affirmed the arbitration award, modifying it only to include distribution of retirement assets.

Janice argues on appeal that "the [third] arbitrator usurped the arbitration by starting a 'new' arbitration proceeding and ignored [forty-seven] days of testimony and evidence in contravention of N.J.S.A. 2A:23B-4(a), N.J.S.A. 2A:23B-23(a)(2)-(a)(4), and N.J.S.A. 2A:23B-15(e)." She also maintains that "the arbitrator's decision to penalize [Janice] and sanction her with [the first arbitrator]'s fees" was unsupported by the credible evidence and "demonstrates evident partiality in violation of N.J.S.A. 2A:23B-23(a)(2)."

In his cross-appeal, Matthew argues "the [third] arbitrator did not apply the correct legal analysis in determining legal and expert fees." In addition, Matthew argues "the Mallamo[2] credit should have started as of the filing of the pendente lite motion or at the latest the date of the order."

In his 2014 Decision, the third arbitrator ordered Matthew to pay open durational alimony to Janice in the amount of $417,917 per year, commencing January 1, 2015, and ending December 31, 2021, when Matthew turned sixty-nine. At that time, depending on Matthew's retirement, a new payment schedule went into effect.

In discussing the Mallamo credits, the third arbitrator calculated Matthew paid to Janice, tax free, over a five-year period from 2008 to 2012: 1) $14,200 per month; 2) a total of $1,021,206 for direct support; 3) $39,026 per year for horse-related expenses; 4) indirect expenses for the horse barn of $41,340 per year; 5) $10,152 for Janice's insurance premiums and; 6) $14,422 per year for the purchase of furniture and joint expenses. Matthew also paid expenses on the Wellington, Florida property totaling $740,926 and all costs for the Bedminster estate totaling $1,224,218.

---

2 Mallamo v. Mallamo, 280 N.J. Super. 8, 17 (App. Div. 1995) allowed retroactive adjustment of pendente lite support.

The third arbitrator reasoned <u>Mallamo</u> credits would be calculated based on pendente lite payments beginning September 28, 2010 through November 30, 2014. He calculated that over that fifty-month span, Matthew paid $1,228,150. To that, the third arbitrator added one-half of the furniture and other joint expenses, one-half of the Florida property carrying costs, and ten percent of the Bedminster estate carrying costs. He concluded Matthew paid a total of $35,141, untaxed, per month in pendente lite support. Thus, Matthew overpaid alimony by $8,459 per month for fifty months, entitling him to a credit of $422,950.

The third arbitrator also found Janice responsible for ninety percent of the first arbitrator's outstanding arbitration fees. He found "[a]fter taking the testimony of [Matthew], and carefully reviewing [Janice's] certification and her counsel's brief, [I am] satisfied that the alleged conflict of interest or the appearance of conflict raised by [p]laintiff in her motion to recuse [the first arbitrator] . . . did not exist." Because of the content and timing of Janice's motion for recusal of the first arbitrator, the third arbitrator concluded Janice strategically moved to recuse the first arbitrator as a result of his unfavorable decision. Thus, the third arbitrator found "[Janice's] strategy succeeded. All the effort, time and money spent on arbitration and mediation with [the first arbitrator] was for naught. [Janice] successfully sabotaged the case. And for

that, she shall bear the cost of her strategic decision."  Matthew, however, was ordered to pay Janice's counsel and accountant $673,010.

After his 2014 Decision, in 2016 the third arbitrator, as he said, "vacated the entire portion of [the] [a]ward that attempted to resolve [Matthew's] alimony obligations should he choose to retire; . . . entered an [o]rder enforcing payment of certain pendente lite obligations to [Janice]; . . . [and] reduced the listing price of the [Bedminster estate] twice . . . ."  In his 2016 Decision, the third arbitrator reconsidered alimony, Mallamo credits and counsel and expert fees.

As a result of Janice's request for reconsideration, the third arbitrator determined the Mallamo credit to be $508,671.  Ongoing pendente lite support paid by Matthew remained unchanged at $24,563 per month, but the payments on behalf of Janice were modified: "50% of furniture ($4776) and 50% of $62,570 in stipulated costs ($31,285) [were] eliminated entirely, and the 10% of the [Bedminster estate] carrying costs ($122,421) [was] eliminated from the chart."  Therefore, when Matthew had paid a total of $31,972 per month in pendente lite support on behalf of Janice, he overpaid support by $7725 per month, or $386,250 over fifty months.  The third arbitrator determined Matthew was owed $386,250 plus the carrying costs of the Bedminster estate, $122,421, or $508,671 in Mallamo credits.

Janice asked for reconsideration of the award relating to payment of the first arbitrator's fees. The third arbitrator declined to entertain most of Janice's reasons for reconsideration, but acknowledged he failed to credit Janice for the portion of the first arbitrator's fees she had already paid. As a result, Janice was credited $85,230. The third arbitrator analyzed all relevant factors under Rule 5:3-5(c) and adjusted his previous counsel fee award. Matthew was ordered to pay $272,888 for Janice's counsel fees. In addition, the parties were ordered to pay $156,598 for the third arbitrator's fees and $11,000 to the second arbitrator. Matthew moved in court to confirm the third arbitrator's award, which Janice opposed. He also asked the court to equally divide the parties' marital retirement accounts.

Having considered the third arbitrator's award, the court found "[i]t cannot conclude that the decision by [the third arbitrator] in this matter was totally unsupported by credible evidence . . . [and] none of the grounds for vacating an arbitrator's award pursuant to N.J.S.A. 2A:23B-23(1) [to] (6) [apply] . . . ." Because the third arbitrator did not specifically address distribution of the Marano Eye Care Profit Sharing Plan, AXA Equitable Annuity, AXA Equitable IRA, and Stifel Nicolaus IRA, valued in excess of $1.3 million, the court found "the parties' retirement accounts should be distributed equally in light of the

length of the marriage and the [a]rbitrator's ruling that the equity in the real estate is to be divided equally."

## II. Legal Discussion.

> [O]nce parties contract for binding arbitration, all that remains is the possible need to: enforce orders or subpoena issued by the arbitrator, which have been ignored, N.J.S.A. 2A:23B-17(g); confirm the arbitration award, N.J.S.A. 2A:23B-22; correct or modify an award, N.J.S.A. 2A:23B-24; and in very limited circumstances vacate an award[,] N.J.S.A. 2A:23B-23.
>
> [Minkowitz, 433 N.J. Super. at 134.]

"[T]here is a strong preference for judicial confirmation of arbitration awards," Linden Bd. of Educ. v. Linden Educ. Ass'n, 202 N.J. 268, 276 (2010) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)), and such awards are given "considerable deference," Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013).

Additionally, the parties' agreement provided "[t]here shall be no appellate review of the [a]rbitrator's award or the trial court's confirmation of said award, except if the trial court fails to apply the requisite standard of review and procedural requirements as detailed in this Consent Order/Agreement."  "As the decision to vacate an arbitration award is a decision of law, this court reviews

the denial of a motion to vacate an arbitration award de novo." Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010).

Janice argues that the third arbitrator failed to abide by the terms of the parties' arbitration agreement and instead conducted a new arbitration against the parties' wishes. She argues he failed to review forty-seven days of prior proceedings and marked evidence in violation of N.J.S.A. 2A:23B-23(a)(2) to (4) and N.J.S.A. 2A:23B-15(e).

Pursuant to N.J.S.A. 2A:23B-23(a):

> the court shall vacate an award made in the arbitration proceeding if:
>
> . . . .
>
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;
>
> (4) an arbitrator exceeded the arbitrator's powers . . . .

Janice argues the third arbitrator did not conduct the arbitration as agreed upon by the parties in their written arbitration agreement when he ignored the

transcripts from prior proceedings before the first and second arbitrators. The record does not support Janice's contention that the third arbitrator failed to consider evidence in the record in violation of N.J.S.A. 2A:23B-23(a)(3). He considered the evidence and prior testimony, acting within the scope of the parties' 2014 consent order.

Pursuant to N.J.S.A. 2A:23B-15(e), "[if] an arbitrator ceases or is unable to act during the arbitration proceeding, a replacement arbitrator shall be appointed in accordance with section 11 of this act to continue the proceeding and to resolve the controversy." "In interpreting a statute, we give words '"their ordinary meaning and significance," recognizing that generally the statutory language is "the best indicator of [the Legislature's] intent."'" Larkins v. Solter, 450 N.J. Super. 519, 534 (App. Div. 2017) (alteration in original) (quoting Tumpson v. Farina, 218 N.J. 450, 467 (2014)). Looking to the statute, the phrase "continue the proceeding" means that a replacement arbitrator picks up where the previous arbitrator left off. The record supports the finding that the third arbitrator did in fact continue the proceedings.

The third arbitrator's final opinion spends eleven pages discussing the Mallamo credits, the very issues Janice raises on appeal. Given the third arbitrator's thorough calculation of the Mallamo credits and Janice's failure to

find any evidence not considered which resulted in prejudice, Janice's claim lacks sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Janice argues the first arbitrator's so-called "fee penalty" is totally unsupported by the record. Janice claims the third arbitrator's sanctioning of Janice with ninety-percent of the first arbitrator's fees and reducing Janice's counsel fee claim by $962,345 was unsupported by the record because the parties consented to the first arbitrator's recusal. Additionally, Janice argues Matthew's behavior resulting in the second arbitrator's recusal was similar to that of Janice's behavior resulting in the first arbitrator's recusal, so that the third arbitrator's fee penalty reflects his "evident partiality against [Janice]." We disagree.

The record demonstrates that on February 8, 2013, Janice's counsel wrote to the first arbitrator and stated Janice had concerns about two individuals who posed potential conflicts of interest. First, Janice's counsel stated Janice is concerned about "a possible conflict of interest due to [the first arbitrator's] firm hiring an associate . . . who had a possible business and personal relationship with [Matthew]." Second, Janice was concerned that the first arbitrator and Matthew's then-counsel "[w]ould be serving as co-arbitrators on a separate matrimonial matter." Janice's counsel then stated:

> My client would like to know if there are any previous inter-relationships between you and [Matthew's counsel's] law firm. Specifically, [Janice] would like to know how many times in the past [four] years [Matthew's counsel] or her firm has retained you to serve either as mediator or arbitrator in a divorce related matter[.] My client would also like to know an estimate of the total amount of fees paid to you, or your firm, as a result of serving as mediator or arbitrator for clients of [Matthew's counsel] during the same period.

The first arbitrator responded to Janice's letter and explained that the hiring of the associate was previously fully disclosed to Janice "some weeks ago" and pointed out that "[Janice] made absolutely no issue of it then as she clearly recognized that it was of no consequence to my continuing to serve as [a]rbitrator in this matter." The first arbitrator also explained that Janice's characterization of an "inter-relationship" between him and Matthew's counsel was misplaced, as he was not currently serving as a co-mediator or co-arbitrator with her. However, the first arbitrator acknowledged that several months earlier he was appointed by the court to serve as a co-mediator with her and they had mediated one three and one-half hour session in September 2012. The first arbitrator said Janice was aware of this and had never raised a concern. Nevertheless, Janice filed a motion to recuse the first arbitrator in February 2013.

13

The third arbitrator discussed the issue in his 2014 and 2016 Decisions, stating: "The significance of these changes [in arbitrators] . . . warrants a close scrutiny and bears on the fee-shifting analysis."  The third arbitrator then stated "After taking the testimony of [Matthew], and carefully reviewing [Janice's] certification and her counsel's brief, the [c]ourt is satisfied that the alleged conflict of interest or the appearance of conflict raised by [Janice] in her motion to recuse [the first arbitrator] . . . did not exist.  The issues are pretextual."

The third arbitrator pointed out that the sequence of events surrounding the first arbitrator's recusal were as follows: "1) [d]isclosure by [the first arbitrator]; 2) [a]greement by counsel . . . that no conflict exists; 3) [a] most unfavorable ruling against [Janice] in December of 2012; 4) [f]iling the recusal motion in February of 2013."  The third arbitrator concluded that Janice filed the motion to recuse the first arbitrator in bad faith, solely because she was dissatisfied with his rulings.

The third arbitrator addressed the fee issue again in his 2016 Decision after Janice sought reconsideration.  He made one adjustment, crediting Janice $85,230 for her previous payment to the first arbitrator.

Even if it were not an arbitrated decision, an award "of counsel fees is discretionary, and will not be reversed except upon a showing of an abuse of discretion."  Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011).  The third

14

arbitrator properly considered Janice's bad faith when awarding fees. See J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (stating bad faith is a consideration when awarding fees and "has a dual character since it sanctions a maliciously motivated position and indemnifies the 'innocent' party from economic harm") (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

Most importantly, Janice has not demonstrated that the third arbitrator's actions revealed "an evident partiality in violation of N.J.S.A. 2A:23B-23(a)(2)." Janice argues Matthew "sought [the second arbitrator]'s removal purportedly due to a new published case around an issue he previously contemplated and waived," and thus he too caused undue delay and increased litigation costs. Janice argues the third arbitrator's decision to punish Janice and not Matthew evidences his partiality. To the contrary, the third arbitrator carefully explained why the two situations were different.

The parties' arbitration agreement stipulated a final arbitration award may be vacated, corrected, modified, or supplemented "for the reasons set forth in N.J.S.A. 2A:23B-23(a)(1) [to] (6) or because the decision was totally unsupported by the credible evidence." Janice has not met the high burden imposed by the statute to void an arbitrator's award. Janice seeks significant modifications, arguing that the third arbitrator did not review all of the evidence

15

presented and had an "evident partiality" against her. If true, those defects in the arbitration would necessitate a total vacation of the award. Compare N.J.S.A. 2A:24-8(b) (requiring a court to vacate the award under the circumstances outlined, including evident partiality of the arbitrator), with N.J.S.A. 2A:24-9 (requiring modification or correction under circumstances such as a miscalculation of figures).

Matthew cross-appeals "[i]n the event of remand" and argues "[t]he award of $430,727 for the expert, and $242,283 for the attorney was not based upon the proper legal analysis." Because we do not vacate the third arbitrator's award or remand, we do not consider this issue.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION