**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4535-17T4

DEBORAH POSNER,

     Plaintiff-Respondent,

v.

DAVID ZIMAND,

     Defendant-Appellant.

_____

> Argued September 25, 2019 — Decided October 21, 2019
>
> Before Judges Gooden Brown and Mawla.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1546-08.
>
> Jasmine Ashley Seabrooks argued the cause for appellant (Epstein Ostrove LLC, attorneys; Daniel Neil Epstein and Jasmine Ashley Seabrooks, on the briefs).
>
> Joshua Peter Cohn argued the cause for respondent (Cohn Lifland Pearlman Herrmann & Knopf, attorneys; Joshua Peter Cohn, on the brief).

PER CURIAM

Defendant David Zimand appeals from post-judgment orders dated February 16, April 27, and May 18, 2018, collectively requiring him to pay counsel fees to plaintiff Deborah Posner and his share of tuition and healthcare costs for the parties' children. We affirm.

We take the following facts from the record. The parties married in 2001, divorced in 2008, and memorialized their settlement in a comprehensive divorce settlement agreement (DSA). Two children were born of the marriage, now seventeen and fifteen years of age, respectively. Both parties are employed. According to the DSA, plaintiff's yearly salary was $60,000 and defendant, who is self-employed as a photographer/videographer, earned $40,000 per year.

Pursuant to the DSA, the parties mutually waived alimony, agreed there were no assets subject to equitable distribution, and defendant would pay plaintiff $500 per month in child support. Relevant to the issues raised on this appeal, the DSA stated the following:

> 3.1. The parties acknowledge that the children will be continuously enrolled in a Jewish Orthodox school and a Jewish Orthodox camp.
>
> 3.2. Both children will initially be enrolled in Ben Porat Yosef [BPY].[1]

---

[1] Ben Porat Yosef is an Orthodox yeshiva day school, which offers an early childhood, elementary, and middle school education. Mission Statement, Ben

3.3. If either party wishes to have the children change schools, that party will provide the other party with a specific brochure of the prospective school, the costs therefore, and the reason or reasons for the suggested change. The other party will then have [thirty] days to object. If she or he does not object, then the children may be enrolled in the new school. If she or he objects, the objecting parent must specifically set forth her or his reason or reasons therefore, which could include continuing the children's enrollment in the same school that they were then attending or, if she or he elects an alternate school other than the children's then present school or the school suggested by the other parent, the objecting parent will provide a specific brochure, the costs and the reason or reasons therefore. The other party will then have [fifteen] days to accept or reject the alternate choice. If that party rejects the choice, then either party may apply to court for appropriate relief. . . .

3.4. The parties' respective rights to participate in the selection of a school are conditioned upon that party paying his or her proportionate share of the costs therefor. If a parent does not contribute to the school costs, then that parent will not be able to participate in the decision-making process. For purposes of calculating the proportionate share, both parties will be deemed to have to contribute one-half of the cost. Both parties will then be credited with any financial aid they receive.

[(emphasis added)].

---

Porat Yosef (Sept. 30, 2019, 3:33 PM), https://www.benporatyosef.org/apps/pages/index.jsp?uREC_ID=1244092&type=d&pREC_ID=1471726.

Post-judgment, plaintiff filed a motion to compel defendant to pay various child-related expenses, including tuition costs. The parties entered into a 2012 consent order requiring defendant to pay the tuition arrears at a rate of $500 per month and modifying article 3.4 of their DSA to allow each parent to pay his/her share of tuition expenses directly to BPY. The consent order maintained each party's responsibility to pay for fifty percent of the tuition.

As the parties' children matriculated, defendant failed to pay both his share of tuition expenses at BPY and their tuition at SAR High School,[2] where both children are now enrolled. Plaintiff paid her share of the BPY tuition and paid the full SAR tuition for both freshman and sophomore years for one of the children.

Plaintiff filed a post-judgment motion in January 2018, seeking to compel defendant to: (1) pay his share of the outstanding BPY tuition; (2) reimburse plaintiff for his share of the SAR tuition; and (3) contribute to the children's future tuition obligations. The motion sought other relief relating to parenting time, summer camp, and counsel fees. The judge entered the February 16, 2018 order requiring, in pertinent part, defendant to reimburse plaintiff for his share

---

[2] "SAR High School is a Modern Orthodox co-educational community of learners[.]" Our Mission, SAR Academy High School (Oct. 2, 2019 9:47 AM), www.saracademy.org/the-sar-experience/our-mission.

A-4535-17T4

of the SAR tuition and pay fifty percent of the children's future tuition expenses, referring issues relating to parenting time and summer camp payments to mediation, and reserving counsel fees for determination at a subsequent hearing.

Defendant moved for reconsideration, arguing the judge should have held a plenary hearing to resolve material factual disputes relating to the interpretation of the DSA regarding tuition payments and an ability to pay hearing on the court's order to pay past, and future, tuition obligations. Plaintiff cross-moved for attorney's fees and costs related to both her initial enforcement motion and the fees incurred defending the motion for reconsideration.

The parties entered into a partial consent order dated April 27, 2018, resolving parenting time issues. Relevant to this appeal, the consent order also stated:

> [The] February 16, 2018 [order] shall be amended such that any and all remaining financial obligation to . . . [BPY] . . . shall be the sole and exclusive responsibility of [d]efendant. . . . Defendant will remain current on his SAR (or other such school as the children may be attending) tuition reimbursement obligation to [p]laintiff before paying BPY.

Thereafter, the motion judge entered a separate order on the same date adjudicating the issues the parties could not resolve. The judge denied defendant's motion for reconsideration and request for a plenary hearing, and

5

granted plaintiff the right to seek counsel fees. At oral argument, the judge concluded there was no basis to grant reconsideration because it would be tantamount to re-writing the parties' DSA and subsequent consent orders wherein they agreed to share in the children's educational costs. The judge also found defendant could meet his financial obligation, but was voluntarily underemployed. She referred to the New Jersey Department of Labor and Workforce Development occupation wage statistics and imputed $75,080 as income for defendant based upon the ninetieth percentile of wage earners employed as photographers. According to the judge, this figure put defendant's income on par with plaintiff whose income was $70,000 at the time.

On May 18, 2018, the court also entered an order granting plaintiff counsel fees and costs relating to her enforcement motion and defendant's motion for reconsideration. In her oral findings, the judge addressed each factor of Rule 5:3-5(c), and pursuant to Rule 4:42-9(a)(1), every factor of RPC 1.5(a).

The judge concluded plaintiff acted reasonably and in good faith in prosecuting her enforcement motion and defending the motion for reconsideration. On the other hand, the judge concluded defendant's claim he could not meet his financial obligations was "disingenuous." The judge relied upon her earlier imputation of income to defendant for purposes of determining

his ability to pay fees. She found he acted unreasonably in failing to meet his financial obligations and noted "[e]ven in the midst of litigation, defendant continued to oppress [plaintiff] as she tried to deal in good faith."

Regarding the motion for reconsideration, the motion judge said: "Again, . . . [defendant] had not been paying anything towards the children's expenses. So, the fact that [plaintiff] has not only had to cover all of their expenses, but pay more counsel fees to defend what I found to be a frivolous application really underscores the defendant's bad faith." The judge awarded plaintiff counsel fees and costs of $23,828.25.

## I.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citation omitted). The "'court must give due recognition to the wide discretion which our law rightly affords to the trial judges'" and disturb such determinations only where the court abused its discretion. Larbig v. Larbig, 384 N.J. Super. 17, 21, 23 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). Appellate courts reverse only if there is "'a denial of justice' because the family court's

'conclusions are . . . "clearly mistaken" or "wide of the mark."'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). "This court does not accord the same deference to a trial judge's legal determinations. . . . Rather, all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citation omitted).

Furthermore, "where there is a denial of a motion for reconsideration [pursuant to Rule 4:49-2], the standard . . . is 'abuse of discretion.'" Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996) (citation omitted). We review counsel fee determinations for an abuse of discretion as well. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011).

On appeal, defendant challenges the February 2018 order directing him to pay his fifty percent share of tuition directly to BPY, reimburse plaintiff for the first two years of SAR tuition, and contribute half of the children's SAR tuition going forward. He challenges the April 2018 order denying his motion for reconsideration and request for a plenary hearing, and compelling him to pay one of the children's summer enrichment expenses. Defendant also contests the May 2018 order directing him to pay plaintiff's counsel fees.

A.

Defendant argues the motion judge abused her discretion in failing to hold a plenary hearing after conflicting certifications from the parties revealed material facts in dispute surrounding the significance of articles 3.1 and 3.4 of the DSA. He argues the DSA "is at the very least ambiguous as to whether either party is required to contribute to school tuition where that party has not participated in the decision-making process," and by failing to conduct a plenary hearing, the court impermissibly "rewrote" the contract in favor of the plaintiff.

While "trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications," "not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995) (internal citations omitted). "Generally, the terms of an agreement are to be given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't. of Transp., 171 N.J. 378, 396 (2002) (citing Nester v. O' Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991) (internal citations omitted); accord

Cty. of Morris v. Fauver, 153 N.J. 80, 103 (1998). "When seeking the parties' intent, agreement terms should be read in context to the whole rather than focusing on isolated phrases or paragraphs." Hoefers v. Jones, 288 N.J. Super. 590, 602 (Ch. Div. 1994), aff'd, 288 N.J. Super. 478 (App. Div. 1996) (internal citation omitted). The court must "discern and implement the common intention of the parties," by "consider[ing] what is written in the context of the circumstances at the time of drafting" and "apply[ing] a rational meaning" consistent with the parties' "'expressed general purpose.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (internal citations omitted).

We reject defendant's argument that the DSA was ambiguous. As the motion judge found, in paragraph 3.1 of the DSA, the parties agreed the children would "be continuously enrolled in a Jewish [o]rthodox school, and a Jewish [o]rthodox camp[.]" Paragraph 3.4 clearly states that for a parent to have a voice in selecting the children's school, the parent must have paid his or her share of the educational expenses. A plain reading of the language in the DSA does not support defendant's meritless argument that a parent may opt out of selecting a school and also neglect to pay the children's school expenses. Moreover, defendant re-affirmed his understanding of the language in the DSA by signing the 2012 consent order, four years later, agreeing to pay his share of the expense.

The DSA's language is unambiguous and did not necessitate a plenary hearing to understand the parties' common intent.

We also reject defendant's argument that a plenary hearing was necessary to determine whether he had the ability to pay. Paragraph 3.2 memorialized the fact that the children were already attending BPY when the DSA was signed. The DSA also memorialized defendant's income was $40,000 at the time he agreed to share in the cost. During the April 27, 2018 hearing, defendant's counsel conceded defendant's income nearest the date of the hearing averaged $37,795 for 2016 and 2017. Moreover, defendant filed a case information statement (CIS) and certified to a budget totaling $4779 per month or $57,348 per year with no debt service expense. Therefore, the judge did not abuse her discretion when she found no prima facie change of circumstances to warrant a plenary hearing.

B.

Defendant argues the judge should not have imputed income of $75,080 per year to him. He asserts plaintiff failed to make a proper showing of his voluntary underemployment or demonstrate defendant had the capacity to earn over $40,000 per year. He contends the orders requiring him to contribute to

11

the children's expenses and pay plaintiff's counsel fees were based on the erroneous imputation and should be reversed.

"'"Imputation of income is a discretionary matter not capable of precise or exact determination[,] but rather require[s] a trial judge to realistically appraise capacity to earn and job availability."'" Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (alterations in original) (citations and internal quotations omitted). In Elrom, we noted the authority to impute income

> is incorporated in the New Jersey Child Support Guidelines (Guidelines). See R. 5:6A (adopting Guidelines set forth in Appendix IX-A to the Court Rules). The Guidelines state:
>
> [i]f the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities:
>
> a. impute income based on potential employment and earning capacity using the parent's work history, occupational [qualifications], educational background, and prevailing job opportunities in the region. The court may impute income based on the parent's former income at that person's usual or former occupation or the average earnings for that occupation as reported by the New Jersey Department of Labor (NJDOL);

[Elrom, 439 N.J. Super. at 435 (alteration in original) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 12 on Appendix IX-A to R. 5:6A at 2635 (2015)).]

Additionally:

> In determining whether income should be imputed to a parent and the amount of such income, the court should consider: (1) what the employment status and earning capacity of that parent would have been if the family had remained intact or would have formed, (2) the reason and intent for the voluntary underemployment or unemployment, (3) the availability of other assets that may be used to pay support, and (4) the ages of any children in the parent's household and child-care alternatives. . . . When imputing income to a parent who is caring for young children, the parent's income share of child-care costs necessary to allow that person to work outside the home shall be deducted from the imputed income.
>
> [Id. at 439 (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 12 on Appendix IX-A to R. 5:6A at 2635).]

Defendant's claims he could not earn greater than $40,000 did not coincide with his CIS expenses, which were 150% greater than his alleged earnings, the sophistication of his web presence, or the well-to-do geographic location of his business and potential clientele. Moreover, as we have explained, according to the DSA and the subsequent consent order, defendant's obligation to contribute to the children's schooling and expenses was predicated upon his earnings of $40,000. Defendant failed to demonstrate a change in circumstances from the

13

time he entered into these agreements. Therefore, although the better practice would have been for the judge to address the aforementioned guidelines' factors in her imputation analysis, they would not have changed the outcome because the judge's findings were supported by the substantial, credible evidence in the record.

Similarly, the imputation had little bearing on whether counsel fees were properly assessed against defendant because the judge determined he acted in bad faith. As a general proposition "where one party acts in bad faith, the relative economic position of the parties has little relevance." Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992).

For these reasons, the income imputation is not a basis to reverse the counsel fee award. Defendant's remaining arguments regarding the counsel fee award, namely, the judge failed to properly apply the facts to Rule 5:3-5(c) and N.J.S.A. 2A:34-23, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4535-17T4