**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3818-21

P.W.B.,

    Plaintiff-Respondent,

v.

T.R.B.,

    Defendant-Appellant.

_____

Submitted November 6, 2023 – Decided April 15, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0325-17.

T.R.B., appellant pro se.

Scher and Isenberg, LLC, attorneys for respondent (Lynda M. Scher, on the brief).

PER CURIAM

Defendant, T.R.B. ("Tara"),[1] appeals from two family court orders. The first is a March 14, 2022 supplemental order[2] in which the trial court determined the amount of plaintiff P.W.B. ("Peter's") child support obligation and granted his request for counsel fees and costs against Tara. The second is a July 14, 2022 order in which the trial court denied Tara's motion for reconsideration of the March 14, 2022 order, request to modify child support, and Peter's request for counsel fees in connection to Tara's motion. Having reviewed the contentions in light of the facts and applicable law, we find no error in the trial court's orders, and accordingly affirm.

I.

We glean the following facts from the record. The parties were married on October 15, 2004 and had one child, "Amy," born in August 2010, who suffers from an undisclosed medical diagnosis for which she has a Section 504 educational plan. On October 3, 2017, a dual final judgment of divorce (DFJD) was entered which incorporated a marital settlement agreement (MSA). The MSA consists of four documents: 1) a fourteen-page parenting agreement; 2) the

---

[1] We use fictitious names to protect the identity of the underaged child born of the marriage.

[2] The March 14, 2022 order was a supplemental order to a January 6, 2022 order.

A-3818-21

terms of the MSA; 3) the personal property agreement; and 4) the life insurance and retirement funds agreement.

Despite this detailed MSA, less than one month later, on November 14, 2017, Tara filed the first in a series of post-judgment motions. Relevant to Amy, there were motions regarding Amy's therapy, seeking clarification of the parenting time agreement with respect to pick up times, requiring Peter provide vacation details, and seeking modification of child support. The results of the motions were mixed, but the court twice denied Tara's motions for modification of child support because she failed to demonstrate changed circumstances. The court also initially denied Tara's request that she be allowed to provide medical insurance coverage for Amy because she failed to show a substantial change in circumstances or demonstrate Peter's insurance caused a financial burden justifying modification of the MSA. The court also denied Tara's request that Peter provide all statements for an account he purportedly opened for his girlfriend from the date the account was opened until January 1, 2018. The court noted Tara had the opportunity to engage in full discovery during the divorce litigation.

On March 26, 2021, the court entered an order granting Tara's request permitting her to provide primary medical coverage for Amy. That created a

3

substantial change in circumstances requiring recalculation of child support. During a September 9, 2021 counsel-only conference, a new trial judge ordered the parties to exchange financial information within three weeks and submit supplemental child support calculations. During that telephone conference, counsel for plaintiff requested the court permit a subpoena for year-to-date records of Tara's sales and commissions from a real estate agency that employs her part time and issues a 1099 at the end of the year, and a financial application she had submitted to purchase a new car. Counsel for Tara did not object. The court allowed the information to be subpoenaed.

Thereafter, on September 23, 2021, without any discussion with the court, Tara issued five subpoenas requesting Peter's financial information from five different institutions: American Federal Credit Union (AFCU), TD Bank, Independence Blue Cross (IBC), AMNJ, a subsidiary of IBC, and a Jeep dealership. The subpoenas to AFCU and TD Bank requested copies of all of Peter's bank account statements, cancelled checks, deposits and withdrawals for accounts in Peter's name or for accounts Peter shared with another person or entity from January 1, 2017, through the date of the subpoena. The subpoena to IBC, Peter's employer, requested a copy of Peter's employment contract, all fringe benefits, retirement benefits, copies of Peter's personal records, W-2

4

statements and wage statements, payroll records, schedules, and hourly rate schedules for all employees, and whether or not Peter had flexibility to work from home. Tara requested the documents starting from January 1, 2017, to the date of the subpoena. On September 27, 2021, Peter moved to quash the subpoenas served upon the AFCU, TD Bank, AMNJ, and IBC.[3]

On January 6, 2022, the parties appeared before the trial court on the motions. The trial court found Tara acted in bad faith with respect to her use of subpoenas, and stated that sending out the subpoenas was a:

> complete dereliction of what the [c]ourt ordered and what I talked about at the time of the [counsel-only] conference. [Peter] just wanted to know. [Peter] found it difficult to believe that you made just one little bit of money selling real estate in a market that's really hot.
>
> And I said, you know what? I think you have the right to get that information. . . . But your attorney sent out subpoenas to everybody dating back . . . to 2017.
>
> That is absolute insanity and it is a perversion and a complete misrepresentation of what I would allow to have occurred.
>
> . . . .
>
> [T]he only issue that needed to be determined was a child support issue, and in lieu of that you sought, through your attorney, to file a motion to re-litigate

---

[3] Peter did not object to the subpoena sent to the Jeep dealership which requested information in connection to the purchase of his Jeep in 2020.

issues that were just decided by [the previous judge] . . . . I'm not going to take kindly to that, which is why I ordered counsel fees.  That's bad faith. . . .

The trial court also heard argument at that hearing regarding whether the number of overnights Amy was entitled to spend with Peter, as set forth in the parenting plan, was the correct number of overnights for calculating the new child support figure.  Tara claimed Amy experienced difficulty sleeping away from her for the previous two years due to separation anxiety and, therefore, refused to sleep at Peter's home overnight.  Peter asserted Tara was engaged in parental alienation.  Tara asserted Amy's therapist had suggested both parents force Amy to spend the allotted overnights at Peter's home.  Tara noted Peter "made a choice and his choice was, [Amy] doesn't have overnights anymore if she doesn't want them."  Tara insisted Amy should not be given a choice regarding whether she wanted to have overnights at Peter's home, stating when Amy calls to come home Tara has to "rearrange my entire life. . . . Like, do you understand I'm an adult and I have a curfew?  Like, this is ridiculous.  I don't have any time to myself."  Tara also claimed because she has more overnights with Amy than the custody agreement originally stated, she is paying more.

The trial court found Peter was acting in the child's best interest because of her unique mental health condition and refused to sanction him.  Tara stated

6

that she was being faulted instead of Peter. In response the trial court stated "[i]t's all about you; right, ma'am? Is it all about you?"

The court found Tara acted in bad faith and, therefore, ordered her to pay Peter's counsel fees on the motion to quash, the trial court stated:

> the case law that deals specifically with the issue of attorney's fees, as sending a message if you will, to prevent vexatious, duplicitous type of litigation. I can't reward somebody. I can't.
>
> How should I have [Peter] incur all his counsel fees when [his counsel] was absolutely correct. That filing of that cross-motion, which really wasn't even a cross-motion, seeking . . . relief, most of which was addressed [by the previous judge].
>
> And some of the allegations within the [c]ertification, which turned out to not be true, misleading at best if not outright false, and to seek all this information and then to file something. . . .
>
> . . . .
>
> You need to move on, ma'am, and . . . because I feel it's necessary. That part of the counsel fee adjustment would be to say, you need to understand that you cannot file motions, which are without merit, or to request information, which is not provided by court rules or otherwise ordered by the court.

The court entered an order granting Peter's request to quash the four subpoenas issued by Tara. The court ordered Peter and Tara to exchange updated, accurate, and completed case information statements, federal tax

7

returns, copies of W-2 and 1099 statements, and child support calculations. It awarded Peter counsel fees and costs for the filing of his motion and stated it would determine the amount of fees upon receiving the updated financial information.

On February 21, 2022, Peter submitted a letter to the court enclosing his child support calculations based on his financial information and the financial information Tara provided him by email several days earlier, noting he used the New Jersey Child Support Guidelines (NJCSG) to calculate child support.

On February 23, 2022, Tara submitted a letter to the court enclosing her child support calculations and alleging Peter underreported his income because he excluded pre-tax available benefits he had utilized, including contributions to his 401(k)-retirement account.

On March 14, 2022, the court entered a supplemental order on the issue of child support accompanied by a memorandum of decision. The court held Peter's child support obligation was $151 per week effective from the filing of his motion on September 27, 2021. After a review of the parties' financial documents and the February 21, 2022 letter from Peter, the court found the letter accurately reflected the appropriate child support calculation. The court also

granted Peter's request for counsel fees and costs for having to file the motion to quash and ordered Tara to pay Peter $6,407.50 in counsel fees.

In reaching its conclusion with respect to counsel fees, the court analyzed the factors set forth in RPC 1.5 and Rule 5:3-5. The court held Tara engaged in bad faith. It explained,

> [Tara] sent out multiple subpoenas in a post-judgment motion without leave or permission from the [c]ourt. The only issue before the [c]ourt was the financial position of the parties so that the [c]ourt could address the basic issue of child support to be paid. Instead, [Tara] sent subpoena's out to various banking institutions seeking documents dating back to 2017. The parties were divorced in 2017 and the issue only involved present income. In addition, [Tara] filed a cross motion which essentially mimicked that which was presented to the prior Judge and already adjudicated. . . . This is a vexatious litigation with the purpose of abusing the process, abusing the subpoena power of the [c]ourt and harassing [Peter]. This is now the second time that [Tara] has been accused of bad faith by the [c]ourt and has been ordered to pay counsel fees.

On April 6, 2022, Tara filed a motion for reconsideration of the March 14, 2022 order. Tara argued the court incorrectly calculated the parties' income. Tara also requested the court apply Peter's child support arrears as a credit to the attorney's fees that she was ordered to pay. Peter cross-moved again for counsel fees.

9

On May 11, 2022, the trial court heard oral argument on the motion for reconsideration. Tara argued Amy has not benefitted from Peter's good fortune, specifically his bonus, since the inception of child support. She noted the MSA did not include Peter's work bonus but, because his work bonus is part of his income, it should have been included. Tara also claimed Peter submitted erroneous calculations with respect to child support contrary to the NJCSG because the child support should be recalculated to conform to the amount of overnights actually taking place.

On July 14, 2022, the court entered an order accompanied by a memorandum of decision finding Tara failed to establish the requisite burden on her motion for reconsideration, the child support calculation was not incorrect, and the calculation of child support was accurately based on financial information provided by the parties and in accordance with the NJCSG. The court explained, in calculating Tara's income, it used the information she supplied to the court. The court recognized the deductions in Tara's tax returns as permissible for IRS purposes, but not admissible for the calculation of child support. The trial court noted Peter was allowing Amy to spend overnights at Tara's home temporarily instead of forcing her to come to his home and found

that decision was in Amy's best interest. It also noted there was an allegation of parental alienation against Tara.

The court denied Tara's request to credit Peter's child support arrears toward her court-ordered attorney's fees in the March 14, 2022 order. The court explained "[c]hild support paid through probation is child support meant for the benefit of the child [and] [t]he attorneys fee assessed by the [c]ourt is unrelated to the care of the child." The court denied Peter's request for attorney's fees and costs related to the reconsideration motion.

This appeal followed.

II.

The findings of fact of family part judges are afforded considerable deference due to their special expertise in the family part. Cesare v. Cesare, 154 N.J. 394, 413 (1998). A reversal of a trial court finding is appropriate only in circumstances where the "factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). Family part judges are afforded greater discretion and "particular leniency" when interpreting family-related agreements. Quinn v. Quinn, 225 N.J. 34, 45–46

(2016) (quoting Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)). A trial court's interpretation of the law is not given special deference and is reviewed de novo. A.J. v. R.J., 461 N.J. Super. 173, 180 (App. Div. 2019).

Pursuant to Rule 4:49-2 a motion for reconsideration "shall state with specificity the basis on which it is made, including a statement of the matters or controlling decision that counsel believes the court has overlooked or as to which it has erred . . . ." Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion. . . ." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). "[A] motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015); see also N.J. Practice, Civil Practice Forms § 105:47 (James H. Walzer) (6th ed. 2023) ("[I]n practice the motion [for reconsideration] requires a showing of law or facts presented in the motion papers that were overlooked or misapprehended and would result in a different result.").

In her brief Tara raises a host of issues, makes wide-ranging allegations of Peter's conduct during and after the marriage, and the conduct of prior trial judges. However, only the two orders on appeal are before us. See Kopec v.

12

Moers, 470 N.J. Super. 133, 153 (App. Div. 2022) (quoting Hayes v. Delamotte, 231 N.J. 373, 387 (2018)) (noting "appeals are taken from orders and judgments" rather than opinions or reasons provided for the court's conclusions). Tara asserts she was not orally ordered to pay the full cost of family therapy at the January 6, 2022 hearing, but was ordered to pay the full cost of family therapy in the January 6, 2022 order, a ruling she argues is inconsistent with the NJCSG. Tara posits she earns less than Peter and, at one point, the family was in therapy with a provider that did not take insurance, causing her to endure a large financial burden. She argues family therapy should be divided on a "pro rata" basis.

The record reflects Tara suggested Amy see two licensed family therapists that were local and in-network, and requested the court order Peter to research the professionals and select one because Tara did not approve of the previous therapist. The court ordered Peter to research the two therapists and select one. Because Tara prevailed in changing medical coverage to coverage she provided, received a credit for providing medical coverage in the child support calculation, and selected two therapists that were in network, Tara failed to demonstrate she had any out-of-pocket therapy fees not covered by her insurance. Therefore, the

court's order that Tara bear all therapy costs was supported by substantial credible evidence in the record and will not be disturbed.

The counsel fee award.

Tara claims she was acting on the advice of counsel when she served the subpoenas and did not act in bad faith. Counsel fee determinations made "by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Abuse of discretion is found when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Furthermore, a trial judge need not consider every factor of Rule 5:3-5(c) in order to determine an award of attorney's fees. Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013). As long as the "factual findings [are] adequately justif[ied]" the trial judge need not analyze every factor. Ibid.

N.J.S.A. 2A:34-23 provides that a court, when awarding attorney's fees to a party, is required to consider the factors set forth in Rule 5:3-5(c), the financial circumstances of the parties, and the good or bad faith of either party.

14

> In a nutshell, in awarding counsel fees, the court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

Mani v. Mani, 183 N.J. 70, 94-95 (2005) (emphasis omitted).

"Examples of bad faith include misusing or abusing process, seeking relief not supported by fact or law, intentionally misrepresenting facts or law, or otherwise engaging in vexatious acts for oppressive reasons." Slutsky v. Slutsky, 451 N.J. Super. 332, 367 (App. Div. 2017). The economic position of the parties will be largely irrelevant where one party acts in bad faith "because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

The trial court's finding Tara acted in bad faith is supported by the record. The court included the analysis of each factor for both RPC 1.5 and Rule 5:3-5(c) in its March 14, 2022 opinion. It correctly found Tara was attempting to re-litigate the divorce proceedings and attempting to obtain documents she was not entitled to that were not relevant to the calculation of child support.

The Child Support Calculation.

Tara argues the trial court erred by failing to deduct Peter's 401(k) distributions from his gross income and failing to do so was a deviation from the NJCSG. Tara's argument stems from Peter's Case Information Statement, where he reported he contributed $12,000 to his 401(k) for the year 2021 and listed that amount as part of the deductions with respect to his net year-to-date income. However, the court did not calculate child support based upon Peter's CIS or his net income. The court calculated child support based upon Peter's gross income, inclusive of the $12,000 he contributed to a 401(k). Peter's letter to the court and proposed child support guidelines both use Peter's gross wages, including any bonuses, and there is no deduction in the support guidelines for any retirement contributions for Peter, only Tara.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION