**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4355-19

DANIA HAJJAR f/k/a
DANIA ZEINO,

     Plaintiff-Appellant,

v.

SAMER ZEINO,

     Defendant-Respondent.

_____

Argued November 10, 2021 – Decided December 20, 2021

Before Judges Fuentes, Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0276-17.

Tanya N. Helfand, argued the cause for appellant (Helfand & Associates, attorneys; Tanya N. Helfand, of counsel and on the briefs; Jacqueline F. Pivawer, on the briefs).

Scott Adam Laterra, argued the cause for respondent (Laterra & Hodge, LLC, attorneys; Scott Adam Laterra of counsel and on the brief; Jeffrey B. Hodge, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Dania Hajjar appeals from the June 26, 2020 Family Part order substantially reducing the counsel fee award she requested and denying her application for a constructive trust, lien, or lis pendens to encumber defendant Samer Zeino's recently purchased home as security for his support obligations.[1] We affirm in part and reverse in part.

Plaintiff, a stay-at-home mom, and defendant, a dentist with a solo practice, divorced on November 28, 2017, after nearly twenty-two years of marriage that produced four children. Based on their marital settlement agreement (MSA) executed on November 20, 2017, and incorporated into the dual final judgment of divorce (FJOD), defendant was obligated to pay open durational alimony in the amount of $11,000 per month and child support of $2,250 per month. Both obligations were payable through the Probation Department, save for $250 being paid directly to the couples' eldest child in college.

Previously, on September 26, 2016, a pendente lite consent support order had been entered requiring defendant to pay plaintiff "up to" $5,000 per month

_____

[1] Defendant also appealed provisions of the order but withdrew his appeal.

for Schedule C expenses and "pay all [plaintiff's] Schedule A and B expenses per the status quo until the marital home [was] sold." The Schedule A expenses included the mortgage, taxes, insurance, and utilities on the marital home. Pursuant to paragraph fifteen of the subsequently executed MSA, "[t]he pendente lite support [o]rder" would remain "in effect" through the first day of the month following "the closing of the home . . . which should be January 1, 2018," at which time the MSA "would take effect."

Over the course of the litigation, the parties engaged in extensive, protracted, and contentious pre-judgment and post-judgment motion practice with different judges, primarily over defendant's noncompliance with his support obligations and failure to comply with court orders. For example, on April 9, 2018, in adjudicating plaintiff's application for counsel fees for "charges . . . incurred post-judgment," a judge recounted that "[p]laintiff was forced . . . to file" multiple applications "to address defendant's lack of cooperation with paying pendente lite orders" as well as his "continuous violations" of the MSA and post-judgment orders, including "dissipation of significant marital assets."[2]

---

[2] In a March 5, 2018 order, the same judge directed defendant's "Vanguard 401K [a]ccount" was "to be immediately liquidated" to satisfy his arrears if defendant failed to pay his outstanding support obligations by March 12, 2018. Additionally, the judge ordered "a constructive trust to be placed upon all of

In awarding plaintiff counsel fees, the judge noted that defendant's persistent non-compliance resulted in "the sale [of the marital home falling] through in December 2017,"[3] the marital home "[going] into foreclosure," "[u]tilities . . . being shut off," and other problems. Given that defendant earned "somewhere between [$]500,000 and a million dollars per year," the judge attributed these occurrences to his "contumacious behavior" and "willful bad faith."

The post-judgment motions underlying this appeal consist of defendant's April 28, 2020 motion to terminate or modify his child and spousal support obligations due to an alleged change in financial circumstances, and plaintiff's June 4, 2020 cross-motion for various relief. Among other things, plaintiff sought payment of support arrears, extension of "the [c]onstructive [t]rust" "originally ordered . . . in the March 5, 2018 [o]rder" "to [d]efendant's new

---

[d]efendant's assets . . . including but not limited to, his potential share of the proceeds from the sale of the marital home, his dental practice, and his retirement and other bank accounts," thereby freezing the accounts to avoid "dissipat[ion] by [d]efendant, absent an [o]rder of the [c]ourt."

[3] Although the marital home was relisted for sale and ultimately sold, the closing never occurred by January 1, 2018, as contemplated in the MSA. As a result, the March 5, 2018 order directed that the "support provisions" contained in the FJOD and the MSA "shall only commence the first of the month following the closing" and "[t]he parties shall submit a [c]onsent [o]rder to the [c]ourt immediately following the closing" so that the Probation Department "can begin collecting support in accordance with the [FJOD] at that time."

home," permission "to file a [l]is [p]endens . . . on [d]efendant's [new] home" until defendant's "ongoing [support] obligation[s] to [p]laintiff and the children [are] paid in full," and "counsel fees for th[e] application."

In her supporting certification, plaintiff averred defendant failed to pay his total monthly alimony and child support obligation of $13,250 for April, May, and June 2020, resulting in total arrears of $30,875. Plaintiff also submitted her attorney's certification of services reflecting $14,375 in fees incurred preparing the opposition to defendant's motion and plaintiff's cross-motion. To support plaintiff's counsel fee request, the attorney certification recounted defendant's history of "bad faith," "constant non-compliance and violations of [c]ourt [o]rders," and "chronic harassment and self-help."[4]

In his reply certification, defendant stated he brought his "support obligation current" by "deliver[ing] to probation on June 10, 2020," a check "[for] $29,875." Defendant attached a copy of the check to his certification. According to defendant, "the source of the[] funds" was a "credit card transaction" as he "ha[d] no means to pay th[e] support from [his] income." Defendant objected to the imposition of a lien on his home or other constructive

---

[4] Plaintiff documented receiving counsel fee awards against defendant on different occasions by four different judges.

trust, averring he purchased the home for $1.1 million "through inherited funds." He also opposed plaintiff's counsel fee request, asserting "[his] application was filed in good faith, based upon a substantial reduction in income which was occasioned, at least in part, by a global pandemic."

On June 26, 2020, following oral argument, the judge substantially denied both parties' motions in an oral decision on the record. Pertinent to this appeal, after reviewing "New Jersey Kids, . . . the system through which the arrears are paid," the judge found defendant had "a credit" on the account of $3,625. The judge explained, "according to probation records," although defendant "did not pay in full over the last four months," he had a prior "credit of $33,500" which was applied to the shortfalls. Consequently, the judge denied plaintiff's request for a "lis pendens[,] or [to] extend the constructive trust to . . . [d]efendant's new home" because Probation's record indicated defendant was not in arrears.

Plaintiff's counsel disputed Probation's record, "believe[ing] that there may be an [accounting] error" caused by changes in past orders when the sale of the marital home was delayed. As a result, she requested an audit by the Probation Department and asked the judge "to reserve" ruling pending completion of the audit. The judge granted counsel's request for an audit of

6

plaintiff's account but declined to reserve decision, indicating plaintiff "[would] have to file another motion and show the proofs that [P]robation made an error."

Regarding counsel fees, the judge declined to award the full amount requested of $14,375. After reviewing the certification of services, the judge determined "[$]450 an hour [was] not out of line with what is charged in a North Jersey area." On the other hand, the judge noted "[p]laintiff receives a good amount of alimony," "[d]efendant has to pay both the alimony and the child support," and "[defendant's] business has been [a]ffected [by the pandemic]." Without further analysis of the requisite factors or governing principles, the judge concluded "given the temporary downturn of . . . [d]efendant's income, at this time, I think $3,000 is appropriate." The judge entered a memorializing order[5] and a companion uniform summary support order (USSO), and this appeal followed.

On appeal, plaintiff challenges the judge's (1) award of only $3,000 in counsel fees; (2) failure to reserve judgment based on the purported error in the parties' probation account and requiring plaintiff to file another motion upon

_____

[5] The June 26, 2020 memorializing order denied "without prejudice" plaintiff's "request to find defendant in violation of litigant's rights and for the immediate enforcement of the support obligations," stating "[i]t appears from NJKIDS that . . . defendant is presently in a credit status, in spite of . . . defendant not paying the full amount of support over the last couple of months."

completion of the audit; and (3) denial of the encumbrance on defendant's new home in the form of a lis pendens, constructive trust, or other lien as security for defendant's support payments.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence,'" id. at 283 (quoting Cesare, 154 N.J. at 411-12), and "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice," N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). We owe no deference, however, to the trial court's "'interpretation of the law'" and "review the trial court's legal conclusions de novo." Thieme, 227 N.J. at 283 (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

Plaintiff asserts "the Probation [Department] can correct clerical or arithmetic errors and assure that entries are accurate without the need for

litigation costs." She argues "[t]he [c]ourt should have ordered Probation to review the issues before requiring a motion." Rule 1:13-1 provides "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative or on the motion of any party." However, Rule 1:13-1 is not "a broad warrant for effecting changes that go beyond the genuinely clerical or those which are truly the product of oversight or omission." Ledezma v. A & L Drywall, 254 N.J. Super. 613, 620 (App. Div. 1992).

Here, the judge denied plaintiff's application without prejudice based on his review of plaintiff's probation account showing defendant was not in arrears. According the "great deference" to which "discretionary decisions of Family Part judges" are entitled when supported by the record, Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), we discern no abuse of discretion. If in fact the Probation accounting audit reveals a mere "clerical" error as plaintiff believes, plaintiff can petition the court to make the correction on its own initiative. See Kiernan v. Kiernan, 355 N.J. Super. 89, 92 (App. Div. 2002) (explaining a court is permitted to "address simple mathematical errors" brought to its attention on the party's application "without even the necessity of a formal motion"). Otherwise, as the judge determined, a motion is required.

Likewise, we reject plaintiff's contention that the judge erred in denying her request to encumber defendant's new home with a lien, constructive trust, or lis pendens as security for defendant's support obligation. "The power of a court of equity to create liens in a divorce in favor of one of the parties to assure the performance of its terms is not to be doubted." Sisco v. N. J. Bank, 158 N.J. Super. 111, 117 (App. Div. 1978). Indeed, "N.J.S.A. 2A:34–23 permits the trial court to require security for the payment of marital obligations," McCarthy v. McCarthy, 319 N.J. Super. 138, 147 (App. Div. 1999), and a judge's determination on this matter, when "evidentially based, must be respected." Dotsko v. Dotsko, 244 N.J. Super 668, 679 (App. Div. 1990) (citing Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Here, because the probation account showed a credit rather than any arrears, and a constructive trust on defendant's IRA to secure plaintiff's support award already existed, we discern no abuse of discretion.

Turning to the counsel fee award, counsel fee determinations rest within the trial judge's sound discretion. Williams v. Williams, 59 N.J. 229, 233 (1971). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v.

10

<u>Pantzer</u>, 141 N.J. 292, 317 (1995)). An abuse of discretion occurs when the trial judge's decision is "'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" <u>Milne</u>, 428 N.J. Super. at 197 (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)). "An abuse of discretion also arises when 'the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" <u>Moraes v. Wesler</u>, 439 N.J. Super. 375, 378 (App. Div. 2015) (quoting <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005)).

"An allowance for counsel fees is permitted to any party in a divorce action, <u>R.</u> 5:3-5(c), subject to the provisions of <u>Rule</u> 4:42-9." <u>Slutsky v. Slutsky</u>, 451 N.J. Super. 332, 366 (App. Div. 2017); <u>see also</u> N.J.S.A. 2A:34-23 (authorizing an award of counsel fees in family actions). "The rule provides that 'all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a).'" <u>Slutsky</u>, 451 N.J. Super. at 366 (quoting <u>R.</u> 4:42-9(b)).

> To determine whether and to what extent such an award is appropriate, the court must consider:
>
> > (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees

of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Ibid. (quoting R. 5:3-5(c)).]

Typically, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). However, "'where one party acts in bad faith, the relative economic position of the parties has little relevance' because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)); see also J.E.V., 426 N.J. Super. at 493 ("'[F]ees may be used to prevent a maliciously motivated party

from inflicting economic damage on an opposing party by forcing expenditures for counsel fees.'" (quoting Kelly, 262 N.J. Super. at 307)).

Here, in awarding an amount substantially less than plaintiff requested, the judge made cursory findings regarding each party's ability to pay and the reasonableness of the fees without referencing or analyzing the applicable Rule 5:3-5(c) factors. See Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990) ("In deciding . . . an application [for counsel fees], the standards set forth in our statutes and cases must be addressed by the judge." (emphasis added)).

Notably, the judge did not scrutinize the record in any meaningful way. He did not consider defendant's documented history of bad faith, noncompliance with orders, dissipation of assets, and relentless litigation. Also, the judge gave no rational explanation for his determination of the extent of the reduction. Instead, the award was based on insufficient reasoning bearing on the fairness of the award. Failure to provide sufficient reasoning for such a decision prevents this court from conducting a meaningful review. See ibid. ("Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion."). We therefore conclude the need for a more in-depth analysis requires reversal and remand. See Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) ("The absence of adequate findings . . . necessitates a reversal . . . .").

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4355-19